**UNITED STATES of America, Appellant,**

v.

**George SNOW, Defendant–Appellee.**

**No. 325, Docket 94–1131.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 2, 1994.

Decided Jan. 3, 1995.

Christopher V. Taffe, Asst. U.S. Atty., Rochester, NY (Patrick H. NeMoyer, U.S. Atty., of counsel) for appellant.

William Clauss, Federal Public Defender's Office, Rochester, NY, for defendant-appellee.

Before: MAHONEY, McLAUGHLIN, and HEANEY,* Circuit Judges.

McLAUGHLIN, Circuit Judge:

After he was stopped for a traffic infraction, defendant gave the police officers consent to search his car. They opened two bags located in the passenger compartment of the car and discovered illegal gun parts and marijuana. Defendant moved to suppress this evidence. The United States District Court for the Western District of New York (Larimer, *J.*), relying on *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), granted the motion on the ground that the search of the closed bags exceeded the scope of defendant's consent. The government appeals under 18 U.S.C. § 3731. We reverse and remand.

* The Honorable Gerald W. Heaney, of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## BACKGROUND

Monroe County Deputy Sheriff R. Michael Hildreth was travelling east on Route 490 in Monroe County, New York. A Chevrolet Nova was travelling in the same direction. Seated in the front of the Nova were the driver and two passengers. The owner of the car, George Snow, was seated in the back.

According to Hildreth, the driver of the Nova was not wearing a seatbelt, the car's exhaust system was too loud, and the car crossed a white line marking the outside edge of the traffic lane. Hildreth stopped the Nova to issue traffic citations. After pulling the car over, Hildreth approached the Nova and engaged the driver in a brief conversation. During this discussion, Hildreth noticed a shotgun on the back seat of the car where Snow was sitting. As a precautionary measure, Hildreth unholstered his gun, ordered the occupants of the Nova to place their hands on the ceiling of the car, and radioed for assistance.

When backup arrived, Hildreth and the other officers ushered the occupants of the Nova into three separate police cars. Before placing him in a police car, Hildreth patted Snow down; he felt what later turned out to be a shotgun shell. Hildreth returned to the Nova, inspected the shotgun, and found it unloaded. (Carrying a *loaded* firearm in a motor vehicle is illegal under N.Y.Envtl.Conserv.L. § 11–0931(2).)

His curiosity piqued, Hildreth decided to question Snow and the others about their identity, the ownership of the Nova, and the purpose of their trip. According to Hildreth, he received conflicting answers to his questions. He therefore sought permission from Snow to search the car. Snow concedes on appeal that he consented (although he apparently contested the issue below).

Hildreth and the other officers searched the car. They opened a duffel bag on the back seat and found parts for an automatic pistol in the bag. They also found marijuana inside a closed bag jammed under the back seat of the car. Snow was arrested and indicted for possession with intent to distribute marijuana. Because he was a convicted felon, Snow was also charged with illegal possession of the shotgun and the pistol parts.

Before trial, Snow moved to suppress the marijuana, shotgun, pistol parts, and certain statements he made to the police. Magistrate Judge Kenneth R. Fisher recommended denial of the suppression motion. The district court rejected that recommendation in part. Relying on *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), the court held that the search of the closed bags inside the car exceeded the scope of Snow's consent. The court suppressed the marijuana and pistol parts, along with some of the statements made by Snow. The court did not suppress the shotgun, however, because it was in plain view on the back seat of the car. The government appeals solely from the suppression of the marijuana and pistol parts pursuant to 18 U.S.C. § 3731.

## DISCUSSION

*Jimeno* is controlling. There, a police officer stopped a suspected drug trafficker, ostensibly for a traffic violation. Telling the defendant that he believed the defendant was transporting narcotics, the officer asked for permission to search the car. The suspect consented. During the search, the officer found a paper bag on the floor of the passenger compartment, opened it, and discovered a kilogram of cocaine. Defendant moved to suppress the cocaine on the ground that his consent to a search of his car did not extend to the closed paper bag found inside the car. The Supreme Court disagreed.

The Court rejected the contention that the police should have obtained explicit permission to search the paper bag. *See Jimeno*, 500 U.S. at 252, 111 S.Ct. at 1804 ("[W]e see no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness."). Instead, the Court reiterated its well-settled test of reasonableness:

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness—what would the typical reasonable person have understood by the ex-

change between the officer and the suspect?

*Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1803–04 (citing *Illinois v. Rodriguez,* 497 U.S. 177, 181–90, 110 S.Ct. 2793, 2797–2802, 111 L.Ed.2d 148 (1990) and *Florida v. Royer,* 460 U.S. 491, 501–02, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion)).

Applying the standard of objective reasonableness, the *Jimeno* Court concluded that the suspect's consent extended to the paper bag, particularly since the officer expressly announced that he was looking for drugs. Because a reasonable person would know that drugs are usually hidden in closed containers, the Court reasoned, the scope of the consent extended to the paper bag.

■ In our case, Snow was not informed of the purpose of the search, and now argues that this missing factor from the *Jimeno* equation requires a different result. We disagree.

The inquiry under *Jimeno* is the same: "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car." *Jimeno,* 500 U.S. at 251, 111 S.Ct. at 1804. What meaning would a reasonable person attach to the word "search"?

The word "search" carries a common meaning to the average person. Dictionary definitions furnish some guide: "to go over or look through for the purpose of finding something; explore; rummage; examine," "to examine closely and carefully; test and try; probe," "to find out or uncover by investigation." Webster's New World Dictionary 1210 (3d ed. 1988). The Oxford English Dictionary (2d ed. 1989) is not much different: "examination or scrutiny for the purpose of finding a person or thing," "look through, examine internally (a building, an apartment, a receptacle of any kind) in quest of some object concealed or lost." *Id.* at 804, 805.

■ Thus, under either the King's or the Colonists' English, the term "search" implies something more than a superficial, external examination. It entails "looking through," "rummaging," "probing," "scrutiny," and "examining internally." We therefore conclude,

based on the plain meaning of this common word, that an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined.

That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent. It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers. If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.

We note that the Fifth Circuit has also concluded, under *Jimeno,* that an individual who consents to a search of his vehicle should expect that closed containers inside the vehicle will be opened and examined, even where, as here, the purpose of the search is not apparent. *See United States v. Crain,* 33 F.3d 480, 483–85 (5th Cir.1994). And the First Circuit has assumed as much. *See United States v. Zapata,* 18 F.3d 971, 973–74, 977–78 (1st Cir.1994) (holding that consensual search of car extended to duffel bags in a case where the object of search was unannounced); *United States v. Infante–Ruiz,* 13 F.3d 498, 505 (1st Cir.1994) (*Jimeno* "would seem to allow" search of unlocked briefcase pursuant to consensual search of car trunk even where object of search was unknown). Accordingly, we find that Snow's consent extended to the closed bags.

In so holding, we note that the search here was of a duffel bag and a similar bag. Neither was locked or otherwise secured, and no damage to the bags was required to gain access. We thus express no view on whether Snow's consent would have extended to items like locked briefcases. Nor do we question an individual's right to limit the scope of his consent, if he so chooses. *See, e.g., Jimeno,* 500 U.S. at 252, 111 S.Ct. at 1804 ("A suspect may of course delimit as he chooses the scope of the search to which he consents.").

## CONCLUSION

Based on the plain meaning of the word "search," an individual who consents to a search of his car should reasonably expect that readily-opened containers discovered inside the car will be opened and examined. The decision of the district court is reversed, and the case remanded.