UNITED STATES of America,

v.

Tommy WALKER, Gary Miller, Raymond Cobb, Cynthia Chaney, Prentis Lindsey, Kevin Watson aka "Archie Hooks", Henry O. Felton aka "Guess", Andre Galloway aka "Gap", Lorraine Howard, Melvina Bennett, George Belgrove, Gregory Leon Whitehurst, David Kyles, and Jorge Pasqual, Defendants.

No. 95–CR–101–ALL.

United States District Court, N.D. New York.

April 10, 1996.

Salvatore J. Piemonte, Syracuse, NY, for Defendant Walker.

John P. Clinton, Jamesville, NY, for Defendant Miller.

Thomas F. Shannon, Syracuse, NY, for Defendant Cobb.

Robert G. Wells, Syracuse, NY, for Defendant Chaney.

William D. Walsh, Syracuse, NY, for Defendant Lindsey.

Frank J. Vavonese, Syracuse, NY, for Defendant Watson.

James H. Medcraf, Syracuse, NY, for Defendant Felton.

Hunt, O'Rourke Law Firm, Syracuse, NY (Frederick H. O'Rourke, of counsel), for Defendant Galloway.

Richard D. Priest, Syracuse, NY, for Defendant Howard.

Lisa A. Peebles, Syracuse, NY, for Defendant Bennett.

George P. Alessio, Syracuse, NY, for Defendant Belgrove.

John F. Laidlaw, Syracuse, NY, for Defendant Whitehurst.

Bruce R. Bryan, Syracuse, NY, for Defendant Kyles.

Thomas J. Maroney, United States Attorney, Northern District of New York, Syracuse, NY (Richard R. Southwick, Assistant U.S. Attorney, of counsel), for U.S.

## MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

In January 1995, defendant George Belgrove was stopped for speeding by New York State Trooper ("Tpr.") Thomas Rodriquez. It is alleged that with defendant's consent, the officer searched the vehicle and found narcotics. Defendant was subsequently charged with criminal possession of a controlled substance, in violation of the New York Penal Law. A state court judge, rely-

ing in part on the New York Court of Appeals' decision in *People v. Banks,* 85 N.Y.2d 558, 626 N.Y.S.2d 986, 650 N.E.2d 833 (1995), ordered the evidence suppressed. Def. Belgrove's Notice of Motion, Document ("Doc.") 194, at 5–6; Government's ("Govt.") Response, Doc. 218, at 36–38.

Defendant was subsequently charged in a federal indictment with conspiracy to possess with intent to distribute cocaine, and to distribute cocaine, cocaine base, marijuana, and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Oct. 19, 1995 Second Superseding Indictment, Document ("Doc.") 218, at 8–9. Presently before the court is defendant's motion to suppress evidence seized from the trunk of his vehicle during the traffic stop. Def. Belgrove's Notice of Motion, Doc. 194, at 5–6. The court held a suppression hearing on March 27, 1996, Syracuse, New York, at which the evidence consisted solely of New York State Trooper Thomas Rodriquez's testimony. Pursuant to Rule 12(e) of the Federal Rules of Criminal Procedure, the following constitutes the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

During the late afternoon on January 6, 1995, defendant Belgrove was stopped by Tpr. Rodriquez for allegedly speeding. Defendant was accompanied by a passenger, David Cupid. When Tpr. Rodriquez asked to see defendant's license and vehicle registration, he noticed an odor of alcohol emanating from the vehicle. In order to conduct a field sobriety test, the trooper told defendant to exit the vehicle. As part of the procedure he follows in similar circumstances, the trooper asked defendant if he was carrying anything that might harm the trooper. Defendant replied in the negative, raised his hands over his head and said "you can check me," and while pointing at his vehicle with both hands said "you can check the car." Defendant's spontaneous, unsolicited consent to search the vehicle struck Tpr. Rodriquez as unusual behavior under the circumstances. The trooper then conducted a "pat-down" search of defendant and asked him to identify the origin and destination of his trip.

Defendant said that he was coming from the state prison in Ossining, New York, and that he was travelling to Utica, New York. The trooper, noting that defendant did not appear intoxicated, decided to question the passenger to determine whether the odor of alcohol was coming from him and not from the driver. Before questioning the passenger, the trooper told defendant to sit in front of the patrol vehicle as a precaution for the trooper's safety.

Tpr. Rodriquez approached the open driver's side window to speak with the passenger. At that point, defendant stood up, walked to the passenger side of the vehicle and leaned over as if to speak to the passenger. When Tpr. Rodriquez ordered defendant to return to the area where he had been seated, defendant complied but appeared agitated. The trooper then questioned the passenger, who said that he was coming from Brooklyn, New York. Given the inconsistent answers from defendant and the passenger, defendant's nervousness and agitated state, his unsolicited offer to search the vehicle, and his apparent attempt to communicate with the passenger, Tpr. Rodriquez became suspicious that some other crime was afoot. In order to verify that defendant consented to a search of the vehicle, Tpr. Rodriquez asked for defendant's permission to conduct a search of the vehicle. Defendant Belgrove replied, "Yes, you can search the vehicle, I just came from [the prison] and it would be stupid for me to have something illegal."

Tpr. Rodriquez called for a backup before searching the vehicle because he was concerned for his own safety. The trooper noted that defendant was agitated and that both defendant and the passenger were larger than the trooper. Before the backup arrived, the trooper searched the passenger compartment of defendant's vehicle, but was unable to locate any weapons or other contraband. While searching the passenger compartment, Tpr. Rodriquez noticed that defendant, who still appeared nervous and agitated, was pacing behind the vehicle. After completing a cursory search, the trooper placed defendant in the locked, rear passenger compartment of the patrol vehicle. He then asked for permission to search the trunk of defendant's

vehicle. Defendant replied affirmatively and did not express any limitations on the area that could be searched.

Believing that he had valid consent to conduct the search, the trooper opened the trunk of defendant's vehicle and observed two jackets, one of which contained a bulge in a front, zippered pocket. He unzipped the pocket and found a clear plastic bag containing what appeared to be cocaine. Tpr. Rodriquez left the contraband in the jacket and returned to his patrol vehicle, where he again radioed for assistance. The trooper waited in his vehicle, without further speaking with defendant, until assistance arrived. Defendant was subsequently charged with possession of narcotics.

## DISCUSSION

Defendant Belgrove, who does not contest the validity of the initial traffic stop, argues that the seizure of the contraband was illegal because the consent to search the trunk was not valid. Furthermore, defendant argues that Tpr. Rodriquez's alleged fear for his own safety did not justify a search of the trunk. Defendant's objections to the validity of the search require the court to determine whether the consent was voluntarily given by defendant during the permissible scope of an investigatory detention. If the consent was valid, the court must also address whether the places searched fell within the scope of the authorized search. The court discusses these issues below.

## I.  Validity of Consent

### A.  Consent Was Voluntary

█ It is well established that a warrantless search is " 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Under one such exception, a search is reasonable if a person voluntarily consents to it. *Schneckloth*, 412 U.S. at 222, 93 S.Ct. at 2045; *United States v. Garcia*, 56 F.3d 418, 422 (2d Cir.1995) (citations omitted); *United States*

*v. Elliott*, 50 F.3d 180, 185 (2d Cir.1995) (citations omitted). If the government seeks to rely upon consent to justify a warrantless search, it must show that the consent was given voluntarily. *Schneckloth*, 412 U.S. at 222, 93 S.Ct. at 2045; *United States v. Deutsch*, 987 F.2d 878, 883 (2d Cir.1993) (citations omitted). To establish that consent was voluntary, "courts must examine the totality of the circumstances to determine whether the consent was a product of that individual's free and unconstrained choice, rather than a mere acquiescence in a show of authority." *Garcia*, 56 F.3d at 422 (internal quotations omitted) (quoting *United States v. Wilson*, 11 F.3d 346, 351 (2d Cir.1993)). If consent is not obtained by coercion, a search conducted pursuant to that consent is not unreasonable. *Garcia*, 56 F.3d at 422 (citation omitted). The test for determining the validity of the consent, furthermore, is an objective one inasmuch as "only unreasonable searches are proscribed by the Fourth Amendment, and that the issue of reasonableness is to be measured by an objective standard." *Garcia*, 56 F.3d at 423. Lastly, consent may be inferred "from an individual's words, acts or conduct." *Garcia*, 56 F.3d at 424 (internal quotations omitted) (citing *Deutsch*, 987 F.2d at 883, and *Schneckloth*, 412 U.S. at 243, 93 S.Ct. at 2056).

█ Applying the above principles, the court concludes that the consent given by defendant Belgrove to search his vehicle was voluntary, and that Tpr. Rodriquez had a reasonable belief that the consent was voluntary. Defendant Belgrove's original consent to search the vehicle was spontaneous, unsolicited, and without any indication that it was produced by coercion. It came within several minutes after defendant was stopped for speeding and when the trooper was about to commence a field sobriety test. It was in response to a legitimate inquiry that was intended to help secure the trooper's safety. Nor is there evidence of coercion in either the conduct or words subsequently used by the trooper to verify that he had defendant's permission to search the vehicle and its trunk. Defendant consented to a search on a second occasion shortly after he provided the original consent, and during the trooper's

investigation of the potential alcohol-related offense. Furthermore, that defendant was detained inside the patrol vehicle when he expressly provided consent to search the trunk does not as a matter of law require a finding of coercion. *See e.g., United States v. Valencia,* 645 F.2d 1158, 1165 (2d Cir.1980) (coercion not inherent in fact of arrest) (citing *United States v. Watson,* 423 U.S. 411, 424, 96 S.Ct. 820, 828, 46 L.Ed.2d 598 (1976)); *United States v. Calvente,* 722 F.2d 1019, 1023 (2d Cir.1983) (coercion not inherent in representation that warrant will be obtained if consent withheld); *United States v. Crespo,* 834 F.2d 267, 271 (2d Cir.1987) (that defendant was under arrest, in custody, or even handcuffed, does not require finding of coercion) (citations omitted), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). In addition, it was within Tpr. Rodriquez's discretion to move defendant from one location to another during the investigatory detention for safety reasons. *Florida v. Royer,* 460 U.S. 491, 505, 103 S.Ct. 1319, 1328, 75 L.Ed.2d 229 (1983) (citing *Pennsylvania v. Mimms,* 434 U.S. 106, 109–11, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977) (*per curiam* )).

Consent may also be inferred from the absence of any objection by defendant Belgrove to the search of the vehicle. *See United States v. Barahona,* 990 F.2d 412, 417 (8th Cir.1993) (passively looking on or actively assisting rather than objecting to search is a factor indicating consent). Nor is it necessary, as defendant claims, that he know of his right to refuse to give consent at the time it was given. It is well established that "knowledge of the right to refuse consent is not a requirement to a finding of voluntariness," *Garcia,* 56 F.3d at 422 (citing *Schneckloth,* 412 U.S. at 231–33, 93 S.Ct. at 2049–50), but is only one factor in the analysis, *see Schneckloth,* 412 U.S. at 226–27, 247–48 & n. 37, 93 S.Ct. at 2047–48, 2058–59 & n. 37. In addition, the trooper did not have an affirmative duty to advise defendant that he may refuse to consent to a search of the vehicle. *Crespo,* 834 F.2d at 271–72 (citing *Schneckloth* ).

Lastly, there was nothing inherently coercive in the length of the traffic stop. Although there is no evidence in the record as to the total number of minutes that the stop encompassed, it is evident from the record that Tpr. Rodriquez's actions were reasonably necessary to dispel or confirm his belief that defendant may have been driving the vehicle under the influence of alcohol. Likewise, when defendant authorized a search of the vehicle, the trooper pursued the investigation diligently and acted reasonably to dispel or confirm his belief that the vehicle contained evidence of a crime. *See United States v. Hooper,* 935 F.2d 484, 497 (2d Cir. 1991) (30 minute investigative detention reasonable) (collecting cases); *United States v. Sterling,* 909 F.2d 1078, 1081 (7th Cir.1990) (75 minute detention reasonable); *cf. United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (declining to establish bright-line rule for duration of investigative stops).

Considering the totality of the circumstances, including defendant's words, acts, and conduct, and the lack of a coercive environment, the court holds that defendant Belgrove voluntarily consented on three occasions to a search of his vehicle, including its trunk. The court further holds that Tpr. Rodriquez possessed a reasonable belief that defendant Belgrove voluntarily consented to a search of his vehicle.

### B. Consent Obtained During Lawful Investigative Stop

Next, the court discusses whether the consent to search the trunk was obtained during a lawful investigative detention. If, as defendant argues, consent was given during a period of confinement that exceeded the scope of a permissible investigative detention, then the consent was tainted by the illegal detention, and any evidence seized as a result of the search must be suppressed.

In arguing that defendant Belgrove could not have given valid consent as a matter of law, defendant urges this court to follow the New York Court of Appeals' decision in *People v. Banks,* 85 N.Y.2d 558, 626 N.Y.S.2d 986, 650 N.E.2d 833 (1995). In *Banks,* the Court reversed a lower court's decision that denied a motion to suppress narcotics. In that case, the driver of a car, in which the

defendant was a passenger, was stopped for failing to wear a seat belt. *Banks,* 85 N.Y.2d at 560, 626 N.Y.S.2d at 987, 650 N.E.2d at 834. Based upon the officer's observations that the defendant was nervous and agitated, and upon inconsistent answers regarding the origin and destination of their trip, the officer detained the two men in order to search the vehicle for weapons or drugs. The officer delayed issuing tickets to the men and radioed for a backup to assist in the search. *Banks,* 85 N.Y.2d at 561, 626 N.Y.S.2d at 987, 650 N.E.2d at 834. After a backup arrived, the officer obtained oral permission from the defendant and written permission from the driver to search the vehicle.

The New York Court of Appeals concluded that the search was unconstitutional and ordered suppression of the evidence. *Banks,* 85 N.Y.2d at 562–63, 626 N.Y.S.2d at 988–89, 650 N.E.2d at 835–36. In arriving at this result, the Court found that the defendant's nervousness and "innocuous discrepancies in his … answers to the Trooper's questions regarding the origin, destination and timing of their trip did not alone, as a matter of law, provide a basis for reasonable suspicion of criminality." *Banks,* 85 N.Y.2d at 562, 626 N.Y.S.2d at 988, 650 N.E.2d at 835 (citing *People v. Milaski,* 62 N.Y.2d 147, 156, 476 N.Y.S.2d 104, 464 N.E.2d 472 (1984)). The Court found that the consent was obtained during a period in which the two men were being illegally detained, inasmuch as the officer admitted that he delayed issuing traffic tickets "for the specific purpose of effecting a search of the automobile." *Banks,* 85 N.Y.2d at 562–63, 626 N.Y.S.2d at 988, 650 N.E.2d at 835 (citing *Florida v. Royer,* 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (plurality opinion)). The court concluded that the seized evidence should be suppressed because the consent was not "acquired by means sufficiently distinguishable from the taint of illegal detention." *Banks,* 85 N.Y.2d at 563, 626 N.Y.S.2d at 988, 650 N.E.2d at 835.

This court declines to follow *Banks* because, although factually similar to the case at bar, it is neither binding on the court nor directly on point. A warrantless search conducted during an investigative detention

must be "reasonably related in scope to the circumstances which justified it initially." *United States v. Montoya de Hernandez,* 473 U.S. 531, 542, 105 S.Ct. 3304, 3311, 87 L.Ed.2d 381 (1985). Furthermore, "[s]uch a seizure must be 'minimally intrusive of [an individual's] Fourth Amendment interests' to be justifiable based on reasonable suspicion. If the intrusion becomes excessive, it ceases to be a *Terry* type detention that can be justified based on reasonable suspicion and instead becomes a seizure that requires a showing of probable cause." *Hooper,* 935 F.2d at 494 (citations omitted). Lastly, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," and "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer,* 460 U.S. at 500, 103 S.Ct. at 1325–26 (citations omitted).

In determining whether defendant Belgrove's consent was given during a lawful investigatory detention, the court must keep in mind that "[t]he scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case." *Royer,* 460 U.S. at 501, 103 S.Ct. at 1325. In addition, it is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth,* 412 U.S. at 220, 93 S.Ct. at 2043–44 (citations omitted). In summary, if the circumstances surrounding the traffic stop constituted a justifiable investigative detention, then defendant Belgrove's consent, if voluntary, "would have been effective to legalize the search" of his vehicle. *Royer,* 460 U.S. at 501, 103 S.Ct. at 1326.

With these principles in mind, the court concludes that defendant Belgrove voluntarily consented to a search of the vehicle during a lawful investigatory detention. As discussed in a previous section of this opinion, the original consent to search the vehicle was given to the trooper several minutes after defendant was stopped for speeding and when the trooper was about to commence a field sobriety test. It also was made in

response to a legitimate inquiry that was aimed at securing the trooper's safety. While the trooper was still investigating his suspicion that defendant was driving under the influence of alcohol, defendant reiterated that the trooper had defendant's consent to search the vehicle. In contrast, the Court in *Banks* found that under the circumstances in that case consent was obtained well after the officer had concluded his investigation concerning the initial reason for the stop. In the instant case, however, defendant Belgrove appears to have provided valid consent during a legitimate period of detention.

The Court of Appeals' decision in *Banks* is distinguishable for another reason. In *Banks*, the officer sought the defendant's consent based only on the defendant's nervous state and inconsistent answers to the officer's questions. The Court found that those facts alone were insufficient "as a matter of law [to] provide a basis for reasonable suspicion of criminality." *Banks*, 85 N.Y.2d at 563, 626 N.Y.S.2d at 988, 650 N.E.2d at 835 (citing *Milaski*, 62 N.Y.2d at 156, 476 N.Y.S.2d 104, 464 N.E.2d 472). In reaching its decision, the *Banks* Court relied to a great extent upon the Supreme Court's opinions in *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), and *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion). The Supreme Court's decision in the latter case is particularly instructive. In *Royer*, several police officers at an airport suspected the defendant of carrying drugs based on the fact that the defendant was travelling under an assumed name, payed cash for a one-way ticket, on defendant's mode of checking his luggage, and because of his general appearance and conduct. *Royer*, 460 U.S. at 503, 103 S.Ct. at 1326. The Supreme Court concluded that these facts "were adequate grounds for suspecting [the defendant] of carrying drugs and for temporarily detaining him and his luggage while they attempted to verify or dispel their suspicions in a manner that did not exceed the limits of an investigative detention." *Id.* As the Supreme Court in *Royer* so aptly stated, there is no "litmus-paper test for distinguishing a consensual encounter from a seizure or for determining when a seizure exceeds the bounds of an investigative stop." *Royer*, 460 U.S. at 507, 103 S.Ct. at 1329.

In the case at bar, the court concludes that Tpr. Rodriquez had a valid basis upon which to continue the investigatory detention beyond the investigation of the alcohol-related offense and to conduct a search. The trooper's decision to detain defendant was based on a number of factors that went beyond the observations of defendant's nervousness and inconsistent answers to questions. In particular, unlike the facts presented in *Banks*, the trooper considered defendant's peculiar, unsolicited offer to search the vehicle, his refusal to obey the order to remain seated, and his attempt to communicate with the passenger. Perhaps more important is that it was necessary to further detain defendant in order to conduct the search to which defendant had just consented. In essence, defendant's consent to search the vehicle disposed of the necessity for further justification to detain him for the purposes of conducting the search. *Schneckloth*, 412 U.S. at 220, 93 S.Ct. at 2043–44.

The evidence is sufficient to justify the investigatory detention of defendant Belgrove, and it shows that the detention lasted no longer than was necessary to effectuate the purpose of the stop. Tpr. Rodriquez was also reacting to circumstances that were rapidly evolving, and his actions were reasonably circumscribed and aimed at confirming or dispelling his suspicions in a brief period of time. *See Hooper*, 935 F.2d at 497 ("Law enforcement officers must be permitted the flexibility to adapt to the circumstances at hand."). Based on the foregoing, the court finds that the trooper had a sufficient basis to detain defendant to conduct a field sobriety test, and to continue the detention to conduct the search of the trunk based on defendant's consent.

Considering the totality of the circumstances, the court concludes that the scope of Tpr. Rodriquez's detention of defendant was lawful. Because the consent was obtained during a lawful detention, suppression of the evidence is not required.

## II. Scope of Search Was Reasonable

■ The court must also determine whether Tpr. Rodriquez exceeded the scope of the search to which defendant Belgrove consented. In particular, the court must determine whether defendant consented to a search of the trunk, and if so, whether that consent could have been reasonably construed to include a search of the jackets found within the trunk.

The "standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *United States v. Snow*, 44 F.3d 133, 135 (2d Cir.1995) (quoting *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 1803–04, 114 L.Ed.2d 297 (1991)). The court first notes, as the findings of fact above show, that defendant consented to the search of the trunk, as well as the passenger compartment of the vehicle itself. Defendant Belgrove first gave permission to conduct a search when he told Tpr. Rodriquez "you can check the car" while pointing at the vehicle. Significantly, defendant did not place any limitation, either by words or conduct, on the area to which he consented to be searched. *Snow*, 44 F.3d at 135. Under the circumstances, it was reasonable for the trooper to believe that he had permission to search the trunk. Even if that belief was not reasonable, defendant gave his consent to search the vehicle on two subsequent occasions, and explicitly authorized a search of the trunk on one of those occasions. In light of the findings with regard to the voluntary nature of defendant's consent, the court concludes that defendant Belgrove voluntarily gave the trooper permission to search the trunk of the vehicle, as well as the passenger compartment. The court turns to the issue whether the authorization to search the trunk extended to the jackets located within the trunk.

The Second Circuit concluded in *Snow* that "an individual who consents to a search of his car should reasonably expect that readily-opened containers discovered inside the car will be opened and examined." *Snow*, 44 F.3d at 135–36. In *Snow*, the Court held that the defendant's consent to search his vehicle extended to the closed bags found in the vehicle's passenger compartment. *Id.* In addition, the validity of the scope of the search of a vehicle, including the trunk and objects contained therein, does not depend on whether the law enforcement officer informed the suspect of the purpose of the search. As the Second Circuit explained:

That the defendant did not—and probably could not—know what the officer was looking for does not change our view of his consent. It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers. If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.

*Snow*, 44 F.3d at 135.

Other circuits likewise have concluded that an individual who provides consent to search his vehicle should reasonably expect that the consent extends to closed containers inside the vehicle, even when the officer does not disclose the purpose of the search. *See United States v. Crain*, 33 F.3d 480, 483–85 (5th Cir.1994); *United States v. Zapata*, 18 F.3d 971, 973–74, 977–78 (1st Cir.1994).

The Second Circuit's decision in *Snow* is controlling in the case at bar. When defendant Belgrove gave his permission to search the vehicle's trunk, he should have reasonably expected that the jackets discovered inside the trunk would be opened and examined. *See Snow*, 44 F.3d at 135–36. Defendant's consent was entirely open-ended, and there is no evidence that he limited the search in any manner. *Id.* at 135 ("If the consent to search is entirely open-ended, a reasonable person would have no probable cause to believe that the search will be limited in some way."). Therefore, given the general permission to search the vehicle, and the specific permission to search the trunk, it was reasonable for Tpr. Rodriquez to search those areas, including the jackets located therein, for evidence of illegal activity. Additionally, the jackets were readily apparent to an observer, and the pockets could be readily opened by a person conducting the search.

*Id.* at 135 (search was of unlocked, unsecured duffel bag, and access to bag was possible without causing any damage). Based on the foregoing, the court concludes that Tpr. Rodriquez did not exceed the legitimate scope of the search of defendant Belgrove's vehicle by searching the jackets contained in the trunk.

## CONCLUSION

In summary, defendant Belgrove's motion to suppress physical evidence is DENIED.

It is so Ordered.