**[Cite as *State v. Tepfenhart*, 2019-Ohio-4599.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-130 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-457 |
| | : | |
| STACY TEPFENHART | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 8th day of November, 2019.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

JEFFREY T. GRAMZA, Atty. Reg. No. 0053392, 101 Southmoor Circle NW, Kettering, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Stacy Tepfenhart appeals from her conviction for possession of heroin. She had entered a no contest plea after the trial court overruled her motion to suppress evidence. On appeal, Tepfenhart asserts that the trial court erred in overruling her motion to suppress, because her consent to search her vehicle did not include her purse on the vehicle's front seat, the search of which revealed contraband. Although the officer did not inform Tepfenhart why he sought to conduct the search, we conclude that her open-ended consent extended to a search of the purse. Thus, the trial court did not err when it overruled Tepfenhart's motion to suppress, and, as a result, the trial court's judgment will be affirmed.

## Facts and Procedural History

{¶ 2} Evidently based on a call from a citizen, Springfield Police Officer Tim Melvin received a dispatch reporting a GMC Jimmy that was being driven erratically – almost striking a motorcycle – in the vicinity of a Walmart at 200 South Tuttle Road. Melvin was aware that there had been a similar call the day before regarding a GMC Jimmy being driven erratically, but this caller had identified Tepfenhart as the vehicle's possible driver.

{¶ 3} Melvin drove to the Walmart and, upon arrival, observed a GMC Jimmy parked near a Game Spot, a business attached to Walmart. Melvin retrieved Tepfenhart's photograph and driving record, which revealed that her Ohio driver's license was suspended. At this point, Tepfenhart returned to the GMC Jimmy, entered it, and drove a short distance to another parking spot. Melvin followed, pulled behind the vehicle, and made a traffic stop based upon Tepfenhart's suspended license.

{¶ 4}   Upon making contact with Tepfenhart, Melvin suspected she was under the influence of a narcotic.   This suspicion was based upon the facts that Tepfenhart appeared "drowsy," her speech, though understandable, was not "very clear," and there was no indication of alcohol use.   Perhaps because of this suspicion, Melvin requested Tepfenhart's consent to search the vehicle.   Based on his austere testimony, Melvin did not inform Tepfenhart of his suspicion or why he was requesting consent to search the vehicle.   Tepfenhart granted the requested consent, without limitation.   Prior to the search, Tepfenhart was removed from her vehicle and placed in the back seat of Melvin's cruiser.   A purse located on the vehicle's front seat was opened and searched.   The search of the purse revealed a flexible glasses case, which was open at one end.   Melvin peered into the case and observed what he described as a napkin.   Melvin removed the napkin, and, upon unfolding it, he discovered two plastic bags; each bag contained a "white substance," which led Melvin to conclude that each bag contained an "illegal substance," and Tepfenhart was arrested.

{¶ 5} Tepfenhart was indicted for possession of heroin and aggravated possession of drugs, both fifth-degree felonies.   Tepfenhart filed a motion to suppress which was overruled by the trial court.   She ultimately pleaded no contest to the heroin possession count, and the aggravated possession count was dismissed.   The trial court sentenced Tepfenhart to a ten-month prison term.   This appeal followed.

**Analysis**

{¶ 6} Tepfenhart's only assignment of error is as follows:

THE   TRIAL   COURT   PREJUDICIALLY   ERRED   AND   COMMITTED

REVERSIBLE ERROR WHEN IT OVERRULED [TEPFENHART'S] MOTION TO SUPPRESS.

{¶ 7} The assigned error, though stated broadly, is focused upon the assertion that Tepfenhart's consent to search the vehicle did not extend to her purse. As explained below, we conclude otherwise.

{¶ 8} "The standard for measuring the scope of a [person's] consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood by the exchange between the police officer and the [consenting person]?" *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), citing *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Thus, neither the "subjective intentions" of the consenting person nor the "subjective interpretation" of the requesting officer are relevant. *United States v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir.2003), quoting Wayne R. LaFave, *Search and Seizure*, Section 8.1 (3d Ed. 1996 and Supp. 2003).

{¶ 9} In *Jimeno*, the requesting officer informed Jimeno, who was stopped for a traffic violation but suspected of drug trafficking, that he believed Jimeno was transporting drugs in his car. The officer requested permission to search the vehicle, which Jimeno granted without limitation. During the search, the officer observed and then opened a paper bag, finding a large quantity of cocaine inside. The Florida courts, including the Florida Supreme Court, concluded that a person's consent to search a particular area does not extend to closed containers located within that area. The United States Supreme Court reversed, noting that Jimeno did not limit the scope of the search, that the

officer informed Jimeno that he suspected Jimeno was transporting drugs, and that "[c]ontraband goods are rarely strewn across the * * * floor of a car." *Jimeno* at 251, quoting *United States v. Ross*, 456 U.S. 798, 820, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). Under these circumstances, and using the objective reasonableness standard, the court ruled that the scope of Jimeno's consent included the closed bag in which the cocaine was found.

{¶ 10} Thus, when a person is informed of the item or items (usually drugs, weapons, or both) for which the consent to search is being sought, and then consent is granted without limitation, the consent includes unlocked but closed containers (such as a purse) that could contain the announced subject of the search. *State v. Boling*, 2d Dist. Montgomery No. 25310, 2013-Ohio-4813, ¶ 21; *State v. Stepp*, 4th Dist. Scioto No. 09CA3328, 2010-Ohio-3540, ¶ 31.

{¶ 11} The more difficult scenario presented by this case is that the officer requested consent to search, but, in doing so, did not mention the subject of the search, and the resulting consent was without limitation. The case law suggests that, in this circumstance, an open-ended consent extends to closed, but easily opened, containers located in the area or place to be searched.

{¶ 12} *United States v. Snow*, 44 F.3d 133 (2d Cir.1995) is a leading example of this conclusion. Snow and his companions were the subject of a traffic stop. Based upon conflicting answers to questions he posed to Snow and the other occupants of the vehicle, the officer became suspicious and requested consent to search the vehicle. Without imposing any limits, Snow granted the requested consent. A closed but unlocked duffle bag was found in the vehicle's back seat; when it was opened, a quantity

of marijuana was found.

{¶ 13} Snow asserted that, since the officer did not inform him of the purpose of the search, "this missing factor from the *Jimeno* equation" compelled the conclusion that his consent did not include the duffle bag. *Snow* at 135. The court rejected this argument, noting that despite the so-called "missing factor," the "inquiry under *Jimeno* [was] the same: whether it [was] reasonable for [the] officer to consider [Snow's] general consent * * * to include consent to examine a [duffle bag] lying on the floor of the car." *Id.*, quoting *Jimeno* at 251. Using the objective reasonableness standard, the court concluded as follows:

> * * * the term "search" implies something more than a superficial, external examination. It entails "looking through," "rummaging," "probing," "scrutiny," and "examining internally." We therefore conclude, based on the plain meaning of this common word, that an individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined.
>
> That the defendant did not – and probably could not – know what the officer was looking for does not change our view of his consent. It is self-evident that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity. It is just as obvious that such evidence might be hidden in closed containers. If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way.

*Id.* The conclusion reached in *Snow* is the prevailing view among the federal circuit

courts.  *See United States v. Canipe*, 569 F.3d 597 (6th Cir.2009) (quoting *Snow* with approval); *United States v. Zapata*, 18 F.3d 971 (1st Cir.1994); *Mendoza-Gonzalez*, 318 F.3d 663 (5th Cir.2003); *United States v. Crain*, 33 F.3d 480 (5th Cir.1994).

{¶ 14} We acknowledge the contrary view articulated in *State v. Brooks*, 11th Dist. Ashtabula No. 2011-A-32, 2012-Ohio-646.  That court, on similar facts to the pending case, concluded as follows:

> Given the lack of any "expressed object" for the search, it logically follows the patrolman did not have any justifiable reason for looking into appellee's black purse.  Under such circumstances, the fact that appellee did not place any limits on the search is inconsequential, since a reasonable person could only conclude that, in light of the abbreviated conversation between herself and the patrolman, she had only consented to a basic search of the cab itself.  Hence, because the patrolman exceeded the scope of appellee's consent by looking in the black purse, the discovery of the substance in the small green "coin" purse was unconstitutional.

*Id.* at ¶ 18.

{¶ 15} Interestingly, the Eleventh District, on similar facts, came to the opposite conclusion two years later in *State v. Korb*, 11th Dist. Lake No. 2013-L-126, 2014-Ohio-4543.  After being stopped for a traffic violation, Korb was asked for consent to search her purse.  She granted the request without limitation.  The officer looked inside a wallet within the purse and found identification cards belonging to someone else.  On appeal, Korb argued, among other things, that by looking into the wallet the officer exceeded the scope of her consent.  Rejecting this contention, the court stated the following:

[The officer] testified that it was his purpose "to find out if she had any weapons or contraband in her purse." It is not clear from the record, however, that [the officer] expressed his purpose of the search to Korb. Whether Korb knew of [the] purpose does not change the outcome. If Korb knew [the officer] was looking for contraband, it was reasonable to understand that such could be found in the wallet. If Korb did not know the purpose of the search, this fact does not invalidate her otherwise valid general consent to search. "If consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way," regardless of the fact "[t]hat the defendant did not – and probably could not – know what the officer was looking for."

*Id.* at ¶ 28, quoting *Snow*, 44 F.3d 133, 135 (2d Cir.1995) and *United States v. Canipe*, 569 F.3d 597, 605 (6th Cir.2009).

{¶ 16} Although we recognize the discussed alternate view, we conclude that Tepfenhart's general open-ended consent included her purse and the glasses case within the purse. A person who grants an open-ended consent to search her vehicle should reasonably understand that the search will include "readily-opened, closed containers located inside the vehicle." *Snow* at 135. Melvin's failure to articulate the reason for the requested consent does not alter this conclusion, because a reasonable person should understand "that a police officer seeking general permission to search a vehicle is looking for evidence of illegal activity * * * [and] that such evidence might be [located] in closed containers." *Id.* Thus, the assignment of error is overruled.

**Conclusion**

{¶ 17} Finding no merit in Tepfenhart's assignment of error, the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J. dissents:

{¶ 18} I disagree. There is no question that Tepfenhart had a legitimate expectation of privacy in the contents of her purse. "Indeed a purse is a type of container in which a person possesses the highest expectation of privacy." *United States v. Jeffers,* 520 F.2d 1256, 1268 (7th Cir.1975), fn. 17. Purses are "repositories of especially personal items that people generally like to keep with them at all times." *Wyoming v. Houghton,* 526 U.S. 295, 308, 119 S.Ct. 1297, 143 L.Ed.2d 408 (Breyer, J., concurring). Rifling through a woman's purse without permission is a substantial invasion. Purses contain a wide range of personal effects, including prescriptions, feminine products, credit card receipts, photos, and other personal information.

{¶ 19} The police did not have probable cause to believe that Tepfenhart had placed contraband in her purse, and the necessary consent to search her purse was not obtained. Significantly, the police did not identify the object of the search. Thus any reliance by the majority on *Boling,* 2d Dist. Montgomery No. 25310, 2013-Ohio-4813, and *Stepp,* 4th Dist. Scioto No. 09 CA 3328, 2010-Ohio-3540, is misplaced. Boling was informed his pat-down was for drugs and weapons. Stepp was informed the trooper was looking for pills. Tepfenhart was not informed what the officer was searching for when

consent to search the vehicle was requested.

{¶ 20} I am of the view that we should not follow the Eleventh District's decision in *Korb;* as the *Korb* court noted, the owner consented to the search of her purse and was present when the officer searched it on the trunk of the vehicle. *See Korb,* 11th Dist. Lake No. 2013-L-126, 2014-Ohio-4543, at ¶ 27. We should follow the Eleventh District's decision in *Brooks,* 11th Dist. Ashtabula No. 2011-A-32, 2012-Ohio-646, which is more analogous to the facts of this case. Like Brooks, Tepfenhart reasonably only consented to a "basic search" of the vehicle. The consent was non-specific. Given the lack of any "expressed object" for the search, it logically follows the police officer did not have authority to open Tepfenhart's purse and the eyeglass container therein; it is only logical that the search must be limited to the specific authorization given.

{¶ 21} Furthermore, even if absent an identified "search object," the officer could search Tepfenhart's purse, he certainly had no authority to rummage through all the purse's contents and open a closed napkin stuffed in an eyeglass container.

{¶ 22} "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire,* 403 U.S. 443, 461-462, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971). By upholding the search in this case, the Court not only ignores this principle, but creates another talisman to overcome the requirements of the Fourth Amendment – no expressed object of a non-specific consent request is necessary. Because the State failed to meet its burden to show that the search of the purse was performed within the scope of Tepfenhart's consent, I would reverse.

Copies sent to:

John M. Lintz
Jeffrey T. Gramza
Hon. Douglas M. Rastatter