*United States v. Smith*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of May, two thousand twenty.

Present:
> RICHARD C. WESLEY,
> DEBRA ANN LIVINGSTON,
> STEVEN J. MENASHI,
> *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                    19-621

ANTHONY SMITH,

> *Defendant-Appellant*.

_____

| | |
|---|---|
| For Appellee: | Owen C.J. Foster and Gregory L. Waples, Assistant United States Attorneys, *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT |
| For Defendant-Appellant: | Andrew Levchuk, Amherst, MA |

Appeal from a judgment of the United States District Court for the District of Vermont

(Reiss, *J.*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Anthony Smith appeals from a judgment and sentence entered on March 12, 2019. Smith was indicted for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g). Before trial, Smith moved to suppress the ammunition, which was found in a duffel bag near the rear passenger seat of the car in which he was traveling, and the firearm, which was found under the driver's seat. He also sought to suppress a statement he made indicating that the gun was not loaded. The district court denied these motions. Smith proceeded to trial, where a jury convicted him of both charges. After Smith was sentenced, the Supreme Court decided *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which held that the government must prove that a defendant knew he was a felon in order to secure a conviction under § 922(g). Smith argues that the indictment and the jury instructions were defective because they failed to articulate that requirement. He also challenges the district court's ruling on his suppression motions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I.     *Rehaif* Claims

The Supreme Court held in *Rehaif* that, "in a prosecution under 18 U.S.C. § 922(g) . . . , the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Neither the indictment charging Smith nor the jury instructions at his trial articulated the knowledge requirement identified by the Court in *Rehaif*. Because Smith did not challenge this failure below, we review his claim "for plain error, considering whether (1) there is an error; (2) the error is clear or obvious . . . ; (3) the error affected the appellant's substantial rights; and (4)

2

the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *See United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020) (quotation marks omitted).

As to Smith's claim that the indictment was jurisdictionally defective because it did not allege an element of the offense, we rejected this claim in *United States v. Balde*, 943 F.3d 73 (2d Cir. 2019). Indeed, Smith appears to have abandoned this claim in his reply brief. We held in *Balde* that an indictment that tracks the language of the statute is sufficient to confer jurisdiction. *See id.* at 89–90. The indictment here mirrors the words of the relevant statute. Thus, "the indictment's failure to allege that [Smith] knew that he was [a felon] was not a jurisdictional defect." *Id.* at 92.

Smith's claim of instructional error is similarly foreclosed by our recent decision in *Miller*, 954 F.3d 551. In *Miller*, we rejected the argument that the district court plainly erred by failing to instruct that § 922(g) requires the government to prove knowledge of felon status. *Id.* at 557–60. We concluded that the defendant's challenge failed at the fourth prong of our plain-error analysis, which allowed us to look beyond the trial record at the defendant's presentence investigation report ("PSR"). *Id.* at 559–60. Relying on the PSR, we reasoned that, because the defendant had been sentenced to and served more than one year in prison for a prior felony conviction, he necessarily knew of his felon status and "would have stipulated to knowledge of his felon status to prevent the jury from hearing evidence of his actual sentence." *Id.* at 560. The same is true here: Smith has multiple prior felony convictions, was sentenced to over one year in prison for two of those crimes, and served nearly seven years in prison for one prior conviction. Smith, like Miller, stipulated to the existence of a prior felony in order to prevent its details from being placed before the jury. *See Miller*, 954 F.3d at 558–59 & n.18. While neither stipulation specifically addressed the defendant's knowledge of his felon status, "we have no doubt that, had

3

the *Rehaif* issue been foreseen by the district court, [Smith] would have stipulated to knowledge of his felon status." *Id.* at 560. Thus, the erroneous instruction does not warrant vacatur of Smith's conviction.

## II. Motions to Suppress

"We review a district court's decision on a suppression motion *de novo* on questions of law and for clear error in factual determinations." *United States v. Gonzalez*, 764 F.3d 159, 165 (2d Cir. 2014).

### A. Fourth Amendment

Smith argues that the district court erred in denying his motion to suppress the firearm and ammunition found in the Chevrolet Trailblazer in which he was traveling. We disagree. The district court found that, when Vermont State Police Corporal George Rodriguez first approached the vehicle, "he observed the driver, a child in the backseat, and [Smith] in the reclined passenger seat." App'x 125. Rodriguez

> asked [the driver] if Smith had any bags in the car and she responded he had one in the trunk. He requested her consent to search the vehicle . . . [and she] signed a written consent form allowing Corporal Rodriguez to search her vehicle. It stated: "I freely give my permission to CPL Rodriguez . . . to conduct a complete search of [the Trailblazer] and its contents here under my control."

App'x 125. Rodriguez proceeded to search the car. "In the backseat, next to where the child had been seated, he saw an open and unzipped red and black canvas bag with no tags or identification with a Ziploc bag full of .22 bullets on top. . . . The bag contained large male clothing." App'x 125–26.

Smith primarily argues that, while the driver of the vehicle consented to the search, Smith did not, so the search of his bag was unlawful. This argument is unavailing. The Fourth Amendment's touchstone is reasonableness and the Supreme Court has "long approved consensual

4

searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *See Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991); *Illinois v. Rodriguez*, 497 U.S. 177, 183–84 (1990). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251. Officers may reasonably conduct a search even if the consenting party lacks actual authority to consent so long as "the facts available to the officer . . . warrant a man of reasonable caution in the belief that the consenting party had authority." *Rodriguez*, 497 U.S. at 188 (quotation marks and alterations omitted).

Here, Rodriguez reasonably believed that the driver had authorized him to search the entire car, including the duffel bag, because the written consent stated that Rodriguez could search the car and its contents. *See Jimeno*, 500 U.S. at 251("[I]t [is] objectively reasonable for the police to conclude that [a] general consent to search [a] car include[s] consent to search containers within that car."); *see also United States v. Sparks*, 287 F. App'x 918, 920–21 (2d Cir. 2008) ("[T]he officer requested—and [the suspect] provided—consent to search 'the vehicle and the contents therein.' Given the broad scope of that consent, it was objectively reasonable for the officer to believe that it covered the bags inside the car."); *United States v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995) ("[A]n individual who consents to a search of his car should reasonably expect that readily-opened, closed containers discovered inside the car will be opened and examined."). Smith insists that, because the bag contained men's clothing, it clearly belonged to a man and not to the female driver. Thus, it was unreasonable for Rodriguez to believe that the bag fell within the scope of the driver's consent and he should have asked Smith before rummaging through the bag. Not so. Police officers need not canvass potential objectors before conducting a lawful search

5

based on the voluntary consent of an individual with apparent authority, like the driver here. *See United States v. Lopez*, 547 F.3d 397, 399–400 (2d Cir. 2008). Moreover, the driver stated that Smith had a single bag *in the trunk*. Based on that information, Rodriguez reasonably believed that the bag *on the back seat* did not belong to Smith. Indeed, Smith's argument presumes that Rodriguez found the bullets after seeing that the duffel bag contained men's clothing. But the district court found that the bullets were in a Ziploc bag on top of the clothing. Thus, Rodriguez found the bullets before he had any reason to believe that the bag did not belong to the driver. Finally, the gun was found beneath the driver's seat, not in the bag, and the driver's consent plainly extended to that area.

Rodriguez reasonably searched Smith's bag pursuant to the driver's consent. Accordingly, the district court properly denied Smith's motion to suppress the firearm and ammunition found in the Trailblazer.

## B. Fifth Amendment

Smith next argues that his statement to Rodriguez that "the gun wasn't loaded," App'x 82, should have been suppressed. We disagree. Before transporting Smith to a detention facility upon his arrest, Rodriguez read Smith his *Miranda* rights and Smith chose to remain silent. *See generally Miranda v. Arizona*, 384 U.S. 436 (1966). Nevertheless, during the drive, Smith asked Rodriguez "what was going on" and Rodriguez informed him "that the ATF [the federal Bureau of Alcohol, Tobacco, and Firearms] was adopting the case" and that "they're always willing to work out a plea deal." App'x 82. Smith responded, "[A]t least it's not a violent felony . . . because the gun wasn't loaded." App'x 82. Rodriguez had not informed Smith that the gun he recovered from the vehicle was unloaded.

6

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Thus, *Miranda* rights attach when a police officer uses "words or actions . . . that they should have known were reasonably likely to elicit an incriminating response." *Id.* at 302 (emphasis omitted). Where, as here, a person invokes the right to remain silent, *Miranda* guarantees that a person's "right to cut off questioning" will be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975) (quoting *Miranda*, 384 U.S. at 474, 479); *see also, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

"This is not a case . . . where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind." *Mosley*, 423 U.S. at 105–06. Rather, Rodriguez refrained from engaging with Smith after Smith invoked his right to silence until Smith asked "what was going on." App'x 82. Rodriguez's response, offering an explanation and prediction of what would happen next, did not represent an impermissible failure to honor Smith's invocation of his right to silence. *See Gonzalez*, 764 F.3d at 167. Accordingly, the district court correctly denied Smith's motion to suppress his statement that the gun was not loaded.

\*　　\*　　\*

We have considered Smith's remaining arguments and find them to be without merit.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk