855 So.2d 148 (2003)
Alexander APONTE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-1858.
District Court of Appeal of Florida, Fifth District.
August 15, 2003.
Rehearing Denied September 30, 2003.
James B. Gibson, Public Defender, and Kevin R. Holtz, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Patrick V. Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.

ON MOTION FOR REHEARING
PER CURIAM.
The State of Florida has moved for rehearing arguing that the cocaine found in a cigarette box in Alexander Aponte's shirt pocket should not be suppressed pursuant to Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The State further asserts that we erroneously relied upon R.R. v. State, 715 So.2d 1062 (Fla. 5th DCA 1998), in our original opinion. Upon reconsideration we withdraw our original decision and affirm the trial court's denial of Alexander Aponte's motion to suppress the contraband.
A police officer saw Aponte standing behind a pick-up truck along with two other persons. As the officer approached, the others walked away leaving Aponte behind. Noticing that a television set was in the bed of the truck, and because they were in a high crime drug area, the officer suspected that Aponte may have been planning to use the television set in exchange for drugs. The officer first engaged Aponte in conversation and then asked his name and what he was doing. Aponte responded by handing the officer a Florida driver's license. The officer then asked if he could search him and Aponte replied, "Okay." During the search the officer discovered a cigarette pack in Aponte's pocket and opened it, revealing crack cocaine. Aponte was subsequently arrested.
In Jimeno, a police officer overheard what appeared to be a drug transaction over a public telephone. Believing that Jimeno might be involved in illegal drug trafficking, the officer followed Jimeno's car and observed a traffic infraction. He stopped the car and told Jimeno that he stopped him for committing a traffic infraction and that he suspected that Jimeno was carrying narcotics. The officer also requested permission to search the car. *149 Jimeno said he had nothing to hide and gave permission to search the car. The search revealed cocaine inside a folded brown paper bag that had been placed on the floorboard. The United States Supreme Court held that Jimeno's right to be free from unreasonable searches was not violated and the standard for measuring the scope of a suspect's consent to search under the Fourth Amendment is that of "objective" reasonableness, i.e., what would a typical reasonable person have understood by the exchange between the officer and the suspect. Jimeno had argued that if the officer wished to search closed containers within a car they must separately request permission to search each container. The Court saw no basis for adding this sort of superstructure to the Fourth Amendment's basic test of objective reasonableness, but did caution that a suspect may limit as he chooses the scope of the search to which he consents.
Jimeno was followed by U.S. v. Mendoza-Gonzalez, 318 F.3d 663 (5th Cir.2003), in which a general consent was given to a border control officer's request for a search that did not indicate the expected fruit of the search. The border patrol officer observed Mendoza's nervous demeanor at a border checkpoint between the United States and Mexico and asked if he could search his truck. Mendoza said, "Sure. Go ahead." The officer saw an array of mostly white boxes inside the trailer that were "mummified" with cellophane wrapping and laid on top of pallets. On top of the white boxes were a few brown cardboard boxes labeled "Ryder Rental Trucks" that were taped with clear tape over the top. The officer became suspicious of the brown boxes, sliced the tape on one of the boxes with a pocketknife, opened the box and found marijuana. Mendoza did not dispute that he consented to the officer's request to "look in" the truck, but argued at the suppression hearing that the search of the cardboard box inside of the truck exceeded the scope of his consent.
The Mendoza-Gonzalez opinion recognized that Mendoza's consent to a general request for a search differed from the consent given in Jimeno where the officer's request included a stated object to the search: to look for narcotics. Apparently, the initial, but unstated object of the Mendoza search was illegal aliens. Although the search revealed no aliens, it did reveal narcotics. Determining that the primary inquiry in interpreting the scope of consent is what a reasonable, objective, third party observer would have understood the suspect had consented to, not the subjective intent of the enforcement officer, the court concluded that Mendoza's consent could be viewed by an objective observer as a general consent to search when no particular object of the search had been indicated. Additionally, the court found it significant that Mendoza knew that marijuana was located in the boxes, did nothing to limit his initial consent and made no objections when the officer began opening the boxes. "Mendoza chose not to place any explicit limitations in his response to their general request, which, in this Circuit, is evidence of general consent." Id. at 667. The court also found important the absence of any attempt to require significant force to unseal the boxes. The single piece of clear tape was interpreted as an attempt to keep the flaps of the box closed to prevent the contents from spilling out and being damaged in transit, rather than any attempt to send any particular message of an expectation of privacy.
A Florida court has considered a similar situation to the instant case and found that a police officer was unjustified in opening a cigarette pack to find contraband. In Jimenez v. State, 643 So.2d 70 (Fla. 2d DCA 1994), the defendant was subjected to *150 a pat-down search as a condition of admission to a dance being held in a National Guard Armory. Many of the attendees did not speak English and as Jimenez approached the checkpoint, he raised his arms indicating to the officer that he was consenting to the pat-down. When the officer found two cigarette packs in a shirt pocket, he attempted to remove them and Jimenez grabbed the officer's hand. The officer removed Jimenez's hand, opened one of the packs and found white powder that later tested positive for cocaine. The court held that it was improper for the officer to continue the search over Jimenez's objections which were apparently communicated through his non-verbal gesture of grabbing the officer's hand.
Less effort was required by the officer herein to lift the contents out of Aponte's pocket and open the lid of the previously opened and unsealed box to observe the contraband than was required in Mendoza-Gonzalez where the officer had to cut tape binding flaps of a cardboard box before the contraband could be observed. Also significant is the absence of any verbal or non-verbal attempt by Aponte to limit the search once he gave a general consent to the search of his person. In our view, Aponte's general consent to the search followed by inaction to stop or limit the search could be interpreted by a reasonable officer to be within the bounds of the original consent.
By contrast, R.R. v. State, 715 So.2d 1062 (Fla. 5th DCA 1998), involved a consensual pat-down for weapons in which the officer determined that a bulge in R.R.'s pants was a cigar tube. The officer asked to "see" the cigar tube and when the defendant complied, the officer not only looked at it, but opened it to find contraband. This court held that consent to "see" the object did not amount to a consent to search its contents. The case was determined by the language used by the officer, that is his desire to simply look at the cigar tube, not to search the contents. R.R. is not dispositive of the instant case.
We affirm the trial court's denial of the motion to suppress and affirm the conviction and sentence.
AFFIRMED.
PETERSON, PLEUS and MONACO, JJ., concur.