SHARP, W., J.
Allen appeals from his convictions and sentences for possession of cocaine,[1] possession of twenty grams or less of cannabis,[2] and possession of drug paraphernalia.[3] He filed a motion to suppress evidence, which the trial court denied. Thereafter he entered a no contest plea to the charges, preserving his right to appeal the denial of the suppression motion. We have jurisdiction,[4] and affirm based on the facts as found by the trial judge.
The record discloses that on May 18, 2004, Deputy Spall was patrolling the area of 20th Street at Orange Blossom Trail in Orlando at 3:00 a.m. It is an area known for drug trafficking and use. He observed Allen riding his bicycle toward the west. Allen’s bicycle had no working lights, a traffic infraction. Deputy Spall stopped Allen by activating his blue lights.
Allen walked up to the front of the patrol car and Deputy Spall got out. He engaged Allen in conversation. He knew Allen, having dealt with him on several prior occasions.
Deputy Spall asked Allen if he had “anything on his person that I need to know about.” Allen responded “no.” The Deputy asked Allen if he could search him and Allen agreed. Deputy Spall also testified that before beginning the search, he told Allen he had the right to refuse and asked him if he understand that right. Allen responded, “yes.”[5]
*437 Allen testified at the hearing somewhat differently. He said Deputy Spall stopped him and told him to come to the patrol car. Two officers were there and no one told him he could refuse the search. Allen testified he was too afraid to walk away and he felt he could not go anywhere. He denied he told Deputy Spall that he could search him. The Deputy immediately turned him around, did not pat him down for weapons, but rather went right into his pockets where he discovered the contraband.
Deputy Spall explained that he located a Chapstick container in Allen’s pocket. He opened the Chapstick and saw a blue plastic baggy with a small amount of what he thought was cannabis. It field tested positive for cannabis. After removing the first baggie, Deputy Spall observed a second containing what he thought was cocaine. It also field tested positive for cocaine. The Deputy also testified he had found contraband in similar containers more than two hundred times and when he saw it he assumed Allen’s Chapstick contained contraband.
After hearing the evidence, the trial court found that there had been a valid traffic stop, which lasted no longer than necessary to issue a citation. He also found that Deputy Spall had asked for and received a general consent to search Allen. The judge did not believe Allen’s testimony. He said:
And, Mr. Allen, your testimony ... I thought your response was a little bit equivocal. You said, very clearly, you didn’t tell him he could search you, and maybe I’m splitting hairs, but somehow in my mind that’s different than saying, no. I didn’t — he asked me and I said, no, you ... I’m not giving you my consent.
And then we have this issue about how far the consent went. In the E.B. [v. State, 866 So.2d 200 (Fla. 2d DCA 2004) ] case, the Court, when it lays out the facts, says that the officer asked for consent to do a pat down. That’s not what the deputy asked for here. It sounds to me like it was pretty clear that the deputy was looking for either drugs or weapons and he went right to your pocket and found the Chapstick tube and found in that the crack cocaine ....
What I wrote down was that you said you didn’t really want to be searched, which I took to be a subjective thought on your part, and you said that the deputy went straight to your pocket ... [and] he found a Chapstick tube. Because it seems to be uncontradicted that the deputy was looking for drugs and/or weapons, I’m going to find that the opening of the tube would have been within the scope of the consent. If the deputy had just said, I want to do a pat down, then I think to actually open the Chapstick tube would have been gone— to have gone too far.
A ruling by a trial court on a motion to suppress is reviewable by the appellate court under the de novo standard. See Connor v. State, 803 So.2d 598, 607-08 (Fla.2001). It is presumptively correct and all findings on disputed facts, inferences and deductions drawn by the court, if supported by substantial competent evidence,[6] are interpreted by the appellate court in a manner most favorable to sustaining the ruling of the trial court. See Morris v. State, 749 So.2d 590, 592 (Fla. 5th DCA 2000).
*438 Allen concedes on appeal that the initial traffic stop was lawful and that he gave Deputy Spall his consent to search his person. His major theory is that a general consent to search one’s person does not encompass consent to open any closed containers found on that person.
 There is no bright-line test for determining the scope of consent to a war-rantless search. Such a determination is made on a case-by-case basis. Florida v. Jimeno, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The standard for measuring the scope of a consent under the fourth amendment is objective reasonableness — what the typical, reasonable person would have understood the exchange of words, under the circumstances, to mean. In this case, the trial court found that Allen gave Deputy Spall a general consent to search his person. Although Allen disputed this at the suppression hearing, the Deputy so testified, and the trial court had the option to believe and accept Deputy Spall’s testimony.
Having been given a general consent to search one’s person, a police officer may indeed seize objects found in that person’s pocket, and if they consist of closed containers, the officer may open them. Aponte v. State, 855 So.2d 148 (Fla. 5th DCA 2003). In this case, as well as Aponte, the defendant made no attempt to limit the search or to withdraw consent after it was given. Thus, the officer did not have to have probable cause to examine the contents of the Chapstick, in this case, or the cigarette pack, in the case of Aponte.
We distinguish this ease from E.B. v. State, 866 So.2d 200 (Fla. 2d DCA 2004) and Harford v. State, 816 So.2d 789 (Fla. 1st DCA 2002). In E.B., nonverbal conduct on the part of the defendant evinced his desire to withdraw consent to a search of his person, which he had previously given. Further, E.B. had only consented to a pat-down search and the officer had no reasonable grounds to think the object he felt in E.B.’s pocket was a weapon. In Harford, the scope of a pat-down search was at issue. The officer in that case agreed that he did not suspect the cigarette box found in the defendant’s front shirt pocket was a weapon.
We conclude that in this case, because Allen gave Deputy Spall his general consent to search his person and made no effort to limit or withdraw his consent, the Deputy was authorized to withdraw the Chapstick from Allen’s pocket and open it to discover the contraband. Further, we do not think that the Deputy needed probable cause to believe that contraband was in the container in order to open it, although in this case, based on the Deputy’s experience, he probably had sufficient cause to suspect it contained contraband. See Dobson v. State, 737 So.2d 590, 593 (Fla. 4th DCA 1999); State v. Burns, 698 So.2d 1282, 1285 (Fla. 5th DCA 1997).
AFFIRMED.
GRIFFIN and SAWAYA, JJ„ concur.

. § 893.13(6)(a), Fla. Stat. (2004).

. § 893.13(6)(b), Fla. Stat. (2004).

. § 893.147(1), Fla. Stat. (2004).

. Fla. R.App. P. 9.140(b)(2)(A)(i).

.The fact that a citizen agrees to a search by a police officer and is not told that he or she may decline the request to search does not vitiate the consensual nature of the response. State v. Poole, 730 So.2d 340, 342 (Fla. 3d DCA 1999); Hosey v. State, 627 So.2d 1289, 1291 (Fla. 5th DCA 1993).

. Walls v. State, 814 So.2d 1235, 1236 (Fla. 5th DCA), rev. denied, 835 So.2d 271 (Fla.2002).