EVANDER, J.
The State appeals from an order granting Thomas’ motion to suppress. Because the trial court failed to apply the correct law in determining the validity of the stop of Thomas’ vehicle and the subsequent search of Thomas’ person, we reverse for further consideration. Specifically, we conclude that the trial court erred in its determination that: (1) the arresting officer’s suspicion of drug activity invalidated an otherwise proper traffic stop for illegal window tint, (2) Miranda[1] warnings were required when the officer questioned Thomas after observing the degree of his nervousness, and (3) a general consent to search did not include a consent to search Thomas’ wallet.
Thomas was charged with possession of oxycodone, possession of twenty grams or less of cannabis, and possession of drug *816 paraphernalia. The charges were filed following a traffic stop of Thomas’ vehicle. Thomas filed a motion to suppress alleging that the stop was pretextual, that he did not voluntarily consent to a search of his person, and that the search of his wallet exceeded the scope of any consent he may have given. An evidentiary hearing was held on the motion. Only two witnesses testified at the hearing — Officers Robson and Nye.
Officer Robson testified that he was on routine patrol around midnight when he observed Thomas’ vehicle in an empty parking lot behind a closed restaurant. Robson had previously made drug arrests in that area. As Robson approached in his vehicle, Thomas drove away. Robson followed Thomas’ vehicle, observed that its windows were unusually dark, and initiated a traffic stop of Thomas for driving a vehicle with illegal window tint. When Robson asked Thomas for his license and registration, Thomas’ hands were shaking and he appeared very nervous. Thomas responded in the negative when asked if he had anything illegal in the car. When Officer Nye arrived, Robson asked Thomas to exit the vehicle. Robson testified that he sometimes requests motorists exit their vehicle, for officer safety reasons, when he has a concern that there may be something illegal in the car or when the individual exhibits an unusual degree of nervousness.
Robson then used his tint meter and confirmed that Thomas’ car windows were, in fact, illegally tinted. As Officer Nye remained with Thomas, Robson returned to his vehicle to run a warrants check on his computer. On cross-examination, Robson acknowledged that he started following Thomas based on a “hunch” or a “suspicion” of possible drug activity.
Officer Nye testified that while Robson was performing the computer background check, he asked Thomas if he had anything illegal on him and “would you mind if I search you?” Thomas was standing by his vehicle and was not handcuffed. According to Nye, Thomas consented to the search request. During the search, Nye removed Thomas’ wallet from his right rear pants pocket. Inside the wallet, Nye found an oxycodone pill. Thomas admitted to Nye that he did not have a prescription for the pill. Thomas was then handcuffed and placed in the back of Robson’s patrol car. A subsequent inventory search of Thomas’ vehicle resulted in the discovery of cannabis and drug paraphernalia.
In granting the motion to suppress, the trial court stated:
I think you have two situations going on here that work against the State.
By his own statement, Deputy Robson indicated that the time he began to follow the Defendant’s car out of the Pan-era parking lot, it was based on a suspicion, which proved accurate, but still a suspicion that — concerning drug transaction.
At that point, the Defendant is an object of investigation.
He then subsequently came up with the tint being too dark. So I think it is pretextual when he stopped him.
When he stopped him even, when he — the first thing he asked him why he was shaking, I think at that point he should have been Mirandized. He was obviously an object of a drug investigation.
When Deputy Nye approached him, he very casually, by his own statement, asked if “I could search you for any drugs and weapons.” [2]
*817 Following the case law, that does not include the contents of wallet because you’ve indicated to me that Nye by his experience is aware that that is where drugs are most often contained. He was in the best position to know to ask the additional question concerning that.
So therefore, the original, whatever this is, whatever the pill was, Oxycodone is suppressed and the subsequent search and seizure of any of the cannabis and drug paraphernalia in the car is suppressed as are the Defendant’s subsequent statements that were given pursuant to that.
A challenged motion to suppress frequently presents mixed questions of law and fact for consideration by the reviewing court. McMaster v. State, 780 So.2d 1026, 1028 (Fla. 5th DCA 2001). Findings of fact made by the trial court are subject to the substantial competent evidence standard. The application of the law by the trial court, however, is reviewed de novo. Id.
The trial court erred in its application of the law in three respects. First, as a general rule, a traffic stop is reasonable under the Fourth Amendment where the law enforcement officer has probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Wimberly, 988 So.2d 116, 119 (Fla. 5th DCA 2008). The constitutional reasonableness of a traffic stop does not depend upon the subjective motivations of the officer who stopped the vehicle. See Whren, 517 U.S. at 813, 116 S.Ct. 1769; Wimberly, 988 So.2d at 119. Here, the undisputed evidence reflects that Officer Robson had probable cause to believe that Thomas was driving a vehicle with illegal window tint.[3]
Second, having initiated a traffic stop, Officer Robson was not required to “Mirandize” Thomas after observing Thomas’ nervous behavior. Miranda warnings are required only in instances of custodial interrogation. See Davis v. State, 698 So.2d 1182, 1188 (Fla.1997). Traffic stops are generally not considered to constitute custodial interrogation and law enforcement officers are permitted to ask a moderate number of questions to confirm identity and to confirm or dispel suspicions related to the scope of the stop without being required to first inform a motorist of his or her Miranda rights. As the United States Supreme Court explained:
[T]he usual traffic stop is more analogous to a so-called “Terry stop,” see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), than to a formal arrest. Under the Fourth Amendment, we have held, a policeman who lacks probable cause but whose “observations lead him reasonably to suspect” that a particular person has committed, is com *818 mitting, or is about to commit a crime, may detain that person briefly in order to “investigate the circumstances that provoke suspicion.” United States v. Brignoni-Ponce, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). “[T]he stop and inquiry must be ‘reasonably related in scope to the justification for their initiation.’ ” Ibid. (quoting Terry v. Ohio, supra, 392 U.S., at 29, 88 S.Ct., at 1884.) Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer’s suspicions. But the detainee is not obliged to respond. And, unless the detainee’s answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not “in custody” for the purposes of Miranda.
Berkemer v. McCarty, 468 U.S. 420, 439-40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (footnotes omitted); see State v. Olave, 948 So.2d 995 (Fla. 4th DCA 2007) (defendant who had been stopped for broken taillight and asked to exit vehicle was not subject to custodial interrogation for purposes of Miranda when police officer asked him whether he had any drugs or weapons in his pockets); State v. Dykes, 816 So.2d 179 (Fla. 1st DCA 2002) (motorist was not subjected to custodial interrogation, for purposes of Miranda, when he was pulled over in routine traffic stop and questioned by one officer while another officer wrote citation for minor undisputed traffic violation). In the instant case, Thomas was not in custody when Officer Nye asked his permission to be searched and, accordingly, there was no requirement that Thomas first be “Mirandized.”
Third, the search of Thomas’ wallet fell within the scope of his consent to a search of his person. The standard for measuring the scope of a suspect’s consent under the Fourth Amendment is that of “objective” reasonableness, to-wit: what would the typical reasonable person have understood by the exchange between the officer and the suspect. Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). If a defendant gives a general consent to search his or her person, a law enforcement officer may seize objects found in that person’s pockets and, if the objects consist of closed containers, the officer may open them. Allen v. State, 909 So.2d 435, 438 (Fla. 5th DCA 2005). The record below reflects that Thomas consented to a search of his person, that his wallet was found on his person, and that Thomas did not object to a search of his wallet or otherwise withdraw or limit his consent. Accordingly, it was error for the trial court to find that the scope of Thomas’ consent did not include a search of his wallet. See Allen (upholding search of lip balm container found in defendant’s pocket where defendant consented to search of his person and made no effort to withdraw or limit his consent); Aponte v. State, 855 So.2d 148 (Fla. 5th DCA 2003) (upholding search of a cigarette pack found in defendant’s pocket where defendant gave general consent to search of his person and did not make any verbal or non-verbal attempt thereafter to limit search).[4]
*819 REVERSED and REMANDED for further proceedings.
ORFINGER, C.J. and GRIFFIN, J., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Officer Nye's actual testimony was as follows:
*817 Q. Okay, and what did you say to him?
A. I asked him if he had an illegal [sic] on him, any guns, knives, drugs, the line I do.
Q. And is that normal protocol?
A. Yes, yes. If I ask consent to search, you know, I've asked A) do you have any guns, knives, drugs, anything like that on you, anything illegal on you? Would you mind if I search you?
Q. You said — that’s exactly what you said?
A. Yeah, that's the same thing I use on everybody.

. Sections 316.2951-.2956, Florida Statutes (2011), provide it is a noncriminal traffic infraction to operate a motor vehicle on which sunscreen material has been applied to the side or rear windows that has the effect of altering the windows’ transparency beyond specified limits.

. The cases cited by Thomas and relied upon by the trial court are distinguishable because they did not involve a general consent by the defendant to a search of his person. In A.L.T. *819 v. State, 63 So.3d 855, 856 (Fla. 4th DCA 2011), our sister court found that the trial court erred in failing to grant A.L.T.’s motion to suppress where police requested consent to search him for weapons and drugs, but exceeded the scope of the consent by removing an incriminating document from his wallet. The A.L.T. court specifically observed that our Aponte decision was distinguishable because “A.L.T. consented to a search of his person for weapons and drugs; he did not give a general consent to search.” A.L.T., 63 So.3d at 858. In State v. Smith, 632 So.2d 1086 (Fla. 5th DCA 1994), a search of the defendant's wallet was found to be improper where there was evidence to support the trial court’s finding that police had only sought consent to search under the seat of defendant's car and the wallet was not found at such location.