[Cite as *State v. Boling*, 2013-Ohio-4813.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

       Plaintiff-Appellee

v.

JERRY L. BOLING

       Defendant-Appellant

Appellate Case No.    25310

Trial Court Case No.   2011-CR-4240

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of November, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by APRIL F. CAMPBELL, Atty. Reg. No. 0089541, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

LUCAS W. WILDER, Atty. Reg. No. 0074057, 120 West Second Street, Suite 400, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}    Defendant-Appellant, Jerry L. Boling, appeals from a trial court decision overruling his motion to suppress evidence of a crack pipe and less than five grams of cocaine. Boling contends that the evidence should have been suppressed because it was obtained as the result of an illegal search and seizure. Specifically, Boling argues that the arresting officer did not have legal justification to: (1) conduct a pat-down search; (2) remove evidence from his pockets; and (3) open a small container found in his pocket, which contained cocaine.

{¶ 2}    We conclude that the trial court did not err in denying Boling's motion to suppress. The pat-down search and removal of evidence from Boling's pockets was lawful, because it was based on Boling's voluntary consent. The scope of Boling's consent extended to the search of the container in his pocket, because Boling specifically consented to a search for drugs and weapons. Given the nature of the consent, it was objectively reasonable for the officer to open the container. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3}    On December 16, 2011, at 10:53 p.m., Officer Mathew Roberts of the University of Dayton Police Department was alone on routine patrol when he observed Jerry L. Boling riding a bicycle on L Street in the city of Dayton, Montgomery County, Ohio. Roberts noticed that Boling was riding without any lights and that he was traveling in the wrong direction down a one-way street. As a result of these traffic violations, Roberts exited his police cruiser and told Boling to stop. Boling stopped, and before Roberts could say anything, Boling told Roberts that he was aware his bicycle had no lights. Roberts then informed Boling that he was also stopping

him for going the wrong way down a one-way street. Boling responded, "You're right." Transcript (May 15, 2012), p. 9, ln. 12.

{¶ 4} Roberts asked Boling where he was going, and Boling explained that he was headed to a friend's residence at nearby apartment complex on K Street. Roberts testified that the apartment complex Boling referred to was associated with several drug complaints; however, Roberts did not consider it an overall high-crime area.

{¶ 5} Roberts next asked Boling for his identification. Boling did not have a valid form of identification on his person, so he provided his information to Roberts verbally. Roberts wrote Boling's information down and ran it through the LEADS system. LEADS verified Boling's identity and returned several field interview cards (FI cards) indicating that Boling had a history of theft offenses. The system did not return any FI cards for offenses involving drugs, weapons, or violence.

{¶ 6} After reviewing Boling's personal information, Roberts asked Boling if he would consent to a pat-down search for drugs and weapons. Boling responded, "Sure." *Id.* at p. 14, ln. 17. Around the same time, two more officers arrived on the scene - Officer Watts and Officer Weber. As Roberts searched Boling, the other officers stood approximately four to five feet away and did not interact with Boling.

{¶ 7} During the search, Roberts felt an object near Boling's right upper-coat pocket. Roberts asked what the object was, and Boling said that it was a lighter. Roberts continued the search and felt another object near Boling's right lower-coat pocket. Once again, Roberts asked what the object was, and Boling explained that it was also a lighter. Roberts did not think the second object felt like a typical lighter; therefore, he asked Boling if he could remove it from his

pocket.  Boling responded, "Sure."  Transcript (May 15, 2012), p. 14, ln. 17.

{¶ 8}    Roberts removed the object from Boling's pocket and discovered that it was not a lighter, but a small, metallic container shaped like a cylinder. Officer Watts testified that it was a type of container commonly used to store contraband.  Transcript (May 15, 2012), p. 30, ln. 21-22.  Roberts handed the container to Officer Watts, who opened it and found a white, rock-like substance inside.  Watts gave the substance to Officer Weber, and Weber conducted a field test.  While Watts and Weber were analyzing the substance, Roberts continued to pat down Boling.

{¶ 9}    As Roberts was patting down Boling's legs, he felt a tube-shaped object in Boling's left pant pocket.  Based on his experience as an officer, Roberts believed the object might have been a pipe or some kind of smoking device.  As a result, Roberts requested permission to remove the object from Boling's pocket, and Boling consented.  Roberts removed the object, and discovered it was a metallic pipe with a rubber fitting at one end and burn marks at the other end.  Roberts believed it was a homemade crack pipe.  Around the same time that Roberts discovered the crack pipe, the field test of the substance in the metallic container tested positive for cocaine.  Roberts then arrested Boling, and issued citations for his traffic violations.

{¶ 10}   On February 1, 2012, Boling was indicted on one count of Possession of Cocaine in an amount less than five grams, a fifth degree felony, and one count of Possession of Drug Paraphernalia, a fourth degree misdemeanor.  On March 13, 2012, Boling filed a motion to suppress the evidence seized as a result of the pat-down search.  After a hearing on the matter, the trial court overruled Boling's motion to suppress, finding that Boling consented to the

pat-down search and that his consent was not the product of coercion. Thereafter, Boling entered a plea of no contest to the possession charge, and the prosecution dismissed the paraphernalia charge. Boling was sentenced to up to five years of community control, and a six-month license suspension.

{¶ 11} Boling appeals from the trial court's decision denying his motion to suppress.

## II. Did the Trial Court Err in Overruling Appellant's Motion to Suppress?

{¶ 12} Boling's sole assignment of error states as follows:

The Trial Court Erred in Overruling Mr. Boling's Motion to Suppress.

{¶ 13} Under this assignment of error, Boling argues that the evidence used against him in this case should have been suppressed because it was obtained as the result of an illegal search and seizure. Boling concedes that he was lawfully stopped for his traffic violations, but argues that Officer Roberts did not have legal justification to: (1) conduct a pat-down search on him; (2) remove objects from his pockets; and (3) open his metallic container. Specifically, Boling contends that his consent to the search was not valid, and that Roberts did not have a reasonable articulable suspicion that Boling was engaged in criminal activity to justify a pat-down.

{¶ 14} As a preliminary matter, we note that in ruling on motions to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay*, 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those

facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 15} Boling raises search and seizure issues under the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and siezures * * *." It is well settled that evidence is inadmissible if it stems from an unlawful search or seizure. (Citation omitted.) *Wong Sun v. United States*, 371 U.S. 471, 484-485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Searches and seizures conducted without a warrant are per se unlawful unless they come within one of the "few specifically established and well-delineated exceptions." (Footnote and citations omitted.) *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 16} Valid consent is one of the well recognized exceptions to the Fourth Amendment warrant requirement. (Citations omitted.) *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "The United States Supreme Court has frequently recognized that a warrantless search is constitutionally permissible where a valid consent to the search has been obtained. The consent operates as a waiver of the constitutional right against unreasonable searches and seizures, provided that it is voluntary." (Citation omitted.) *State v. Sisler*, 114 Ohio App.3d 337, 342, 683 N.E.2d 106 (2d Dist. 1995).

{¶ 17} "Voluntariness is a question of fact to be determined from all the circumstances * * *." *Schneckloth* at 249. " 'Important factors for the trial court to consider in determining whether a consent was voluntary include: (1) the suspect's custodial status and the length of the initial detention; (2) whether the consent was given in public or at a police station; (3) the

presence of threats, promises, or coercive police procedures; (4) the words and conduct of the suspect; (5) the extent and level of the suspect's cooperation with the police; (6) the suspect's awareness of his right to refuse to consent and his status as a "newcomer to the law"; and (7) the suspect's education and intelligence.' " *State v. Stepp*, 4th Dist. Scioto No. 09CA3328, 2010-Ohio-3540*, ¶ 22,* quoting *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747, ¶ 23, citing *Schneckloth* at 248-249. (Other citations omitted.)

{¶ 18} In this case, Boling was lawfully stopped in a non-violent manner on a public street by a single officer. While two other officers arrived at the scene later, they stood four to five feet away and did not interact with Boling at any time. Boling was questioned by Roberts for only a short period of time, and the questions were not coercive and could be easily understood by Boling, a 44-year-old man who had completed one year of college. Transcript, p. 35, ln. 24; p. 36, ln. 1. During the stop, Boling gave Roberts permission to pat him down and to remove the metallic container and crack pipe from his pockets. While there is nothing in the record indicating that Roberts advised Boling of his right to refuse the search, "the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." (Footnote omitted.) *Schneckloth,* 412 U.S. at 249, 93 S.Ct. 2041, 36 L.Ed.2d 854. Furthermore, Boling did not either ask or attempt to leave the scene. Instead, he cooperated with Roberts, and permitted Roberts to search him without any objection. Boling's conduct indicates that his consent was voluntary; therefore, his consent was valid.

{¶ 19} Because the metallic container and crack pipe were lawfully seized pursuant to Boling's consent, we need not address whether a reasonable suspicion of criminal activity existed to justify the pat-down search. However, the issue remains whether the scope of Boling's valid

consent extends to searching the contents of the container.

{¶ 20} "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" (Citations omitted.) *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "The scope of a search is defined by its express purpose or by the nature of the object being sought." *State v. Riggins*, 1st Dist. Hamilton No. C-030626, 2004-Ohio-4247, ¶ 30, citing *Jimeno* at 251. (Other citations omitted.) "Even if a suspect consents to a search of his person for drugs, reasonableness limits the time, place, and scope of the search." *Id*. at ¶ 31.

{¶ 21} With respect to searching containers, it is well settled that when an officer obtains consent to search a vehicle, any containers found inside the vehicle may also be searched if there are no limitations placed on the search, and the officer asserts that he intends to look for items which could possibly be inside the container. *See Jimeno* at 251; *Stepp*, 4th Dist. Scioto No. 09 CA3328, 2010-Ohio-3540. The following case law indicates that the same principle applies to the search of containers found on a defendant during a consensual search of the defendant's person.

{¶ 22} In *State v. Crawford*, 151 Ohio App. 3d 784, 2003-Ohio-902, 786 N.E.2d 83 (2d. Dist.), an officer conducted a consensual pat-down search for weapons on a defendant and asked the defendant if he could remove a triangular object from his pocket. *Id.* at ¶ 8, 10. The defendant consented to the removal of the object from his pocket, and the officer discovered it was a package wrapped in tissue paper. *Id*. at ¶ 10, 11. The officer unwrapped the package and discovered that it contained cocaine. *Id*. at ¶ 11. We concluded that unwrapping the

package exceeded the scope of consent, because there was no reasonable likelihood that the package could have contained a weapon. *Id*. at ¶ 26. This necessarily implies that the search would have been within the scope of consent had there been a reasonable likelihood that the package contained a weapon. Therefore, if it is reasonably likely that a container could hold the object of a consensual search, opening the container would be within the scope of consent.

{¶ 23} *In State v. Frost*, 77 Ohio App.3d 644, 603 N.E.2d 270 (10th Dist. 1992), a defendant displayed some attributes of a drug courier while in an airport, and two officers stopped the defendant, explained why they stopped him, and asked if he would consent to a pat-down search. *Id*. at 647. The officer told the defendant that the search was for drugs or contraband. *Id.* at 648. The defendant consented to the search, and during the pat-down, one of the officers felt an object in the defendant's right front pocket. *Id*. at 647. The officer asked what the object was, and the defendant said it was cigars. *Id*. The officer asked if he could remove and examine the object from his pocket and the defendant said, "No problem." *Id*. at 648. The officer removed the object from the defendant's pocket, and it was a package wrapped in plastic. *Id*. "[H]e did not ask permission but told defendant that he would have to open the package to inspect it to see what was in it." *Id.* The defendant did not object to the officer opening the package. *Id*. The officer found cocaine in the package and the defendant was arrested. *Id*. On appeal, the defendant argued that he did not consent to the package being searched. *Id*. at 649. The Tenth District concluded that the search of the package was within the defendant's scope of consent and stated:

> We cannot say that the trial court erred or abused its discretion in believing
> the officer's testimony that defendant consented to this search. The officer's

testimony was that defendant consented to the search of the object in his pocket to ascertain if it contained cigars. When it was removed from his pocket, the officer could not ascertain the nature of the contents of the package by only looking at it, and told defendant that it would have to be opened to see what was in it. It was at this point that defendant did not object or expressly consent. However, if the officer's testimony that defendant consented to an examination of the object to ascertain if it contained cigars is believed and accepted, no further consent was necessary for opening the package since it had already been given. *Id*. at 650.

{¶ 24} We also note that appellate courts in other states have concluded that the scope of a consensual search of a person may include the search of containers found on the person. *See Allen v. State*, 909 So.2d 435, 438 (Fla.App.2005) ("Having been given a general consent to search one's person, a police officer may indeed seize objects found in that person's pocket, and if they consist of closed containers, the officer may open them"); *See also State v. Lacewell*, N.C. App. No. COA07-657, 2008 WL 1948032, *3 (May 6, 2008) (consent to search the defendant's person for weapons or contraband extended to the search of a small Advil container found in the defendant's pocket).

{¶ 25} In the present case, Boling expressly consented to be searched for drugs and weapons. Boling did not place any limitations on the search and consented to the officer removing the metallic container from his pocket. When the container was removed from Boling's pocket, the officers could not ascertain whether it contained drugs by just looking at it. Additionally, Officer Watts testified that it was a type of container commonly used to store contraband. A typical reasonable person would have expected the container to be searched,

because the object of the search was drugs, and given the size and type of container, there was a reasonable likelihood that drugs could have been found inside. Furthermore, the search was not unreasonable based on the facts and circumstances of this case. Accordingly, Watts did not exceed the scope of the consensual search when he opened Boling's container.

{¶ 26} For the foregoing reasons, the trial court did not err in overruling Boling's motion to suppress. The metallic container and crack pipe were lawfully searched and seized pursuant to valid consent. Accordingly, Boling's sole assignment of error is overruled.

### III. Conclusion

{¶ 27} Having overruled Boling's sole assignment of error, the decision of the trial court denying Boling's motion to suppress is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurring:

{¶ 28} The trial court made a decision based on the evidence before it. Depending on innumerable factors, the result in this motion might have been different had there been testimony, e.g., from the defendant, for the court to weigh in determining whether the State met its burden of showing consent. Based on the record before us, I concur that the judge's decision should be affirmed.

{¶ 29} The trial court heard testimony that a person who knew he had drugs on him, knowingly and voluntarily gave his consent to the police to search him and any containers on him for drugs. No matter the retrospective, inherent difficulty in understanding and accepting this choice by the defendant (there could be reasons, e.g., he forgot he had the drugs, the containers or

even the pants, were not his), the trial court had no factual basis to find otherwise, unless it were to totally reject the only testimony presented to it.

{¶ 30}  Under *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed 2d 1247 (1968), "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt."  The reasoning is that a defendant should not have to risk exercising his constitutional rights by testifying in a suppression hearing at the risk of incriminating himself. *Id.*

{¶ 31}  If the prosecutor, having interviewed the officers, believed the consent was not voluntary and knowing, the evidence should not be used against the defendant; at the same time, if the defendant honestly believed his consent was not given knowingly and voluntarily, there seems to be no downside in testifying and allowing a trial court to view and hear all the testimony.

. . . . . . . . . .

DONOVAN, J., dissenting:

{¶ 32}  I disagree.  In my view, the testimony adduced establishes that Officer Roberts, without any justification, was looking for narcotics and he found them.  There is absolutely nothing in this record which establishes a basis to believe that Boling was armed and dangerous.

{¶ 33}  Prior to the search, Boling was compliant, made no assertive movements, was not belligerent, did not reach into his pockets and had not discarded anything.  Although the State argues the search was for "officer's safety" and consensual, the search was neither justified from its inception nor was it limited in scope to the accomplishment of its stated goal.

**{¶ 34}**  *Lacewell* is distinguishable in that the initial request included a request to search for contraband, not just weapons, hence the North Carolina court could reasonably find that Lacewell understood the scope of his consent included a search for drugs.  With respect to Boling, the State may not claim more authority than what was given in conducting a limited pat down for weapons.

**{¶ 35}**  In my view, the majority sets a dangerous precedent by citing with approval two states which have extended a consensual pat down of one's person for weapons to necessarily include opening closed containers (which are clearly not weapons) located on the individual. This is especially true, as here, where the trial court's decision failed to address both the scope of Boling's consent and the opening of the closed cylinder.

**{¶ 36}**  Lastly, the concurring opinion is critical of defendant's choice not to testify, however, the lawfulness of the search and the scope of Boling's consent was the State's burden to establish, not Boling's.

**{¶ 37}**  I would reverse.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck
April F. Campbell
Lucas W. Wilder
Hon. Frances E. McGee