TORPY, J.
The State challenges the order suppressing a firearm and cannabis found in Appellee’s car. The sole argument advanced by the State is that the encounter between Appellee and police officers was, as a matter of law, consensual. Accordingly, it urges that the trial court erred in concluding that Appellee was seized prior to the discovery of incriminating evidence in his car. Concluding that no error has been demonstrated on the legal theory advanced by the State, we affirm.
The uniformed police officers here responded to a complaint involving noise coming from Appellee’s apartment. Upon arrival, they knocked on the door. When Appellee opened the door, they could smell the odor of burning marijuana. Appellee, upon seeing the officers, immediately slammed the door. As one of the officers characterized the encounter: “he slammed the door in my face quite rudely.” At that point, the officers continued to knock on the door “[b]ecause we could smell marijuana coming from the apartment.” Appel-lee did not open the door again. Although the officers left the building, they re *174 mained in the complex parking lot and pondered whether to get a search warrant. After a few minutes, the officers saw Ap-pellee and a female walk down the stairs, enter a car, and drive away. They followed him in a marked police car through a series of turns until Appellee stopped in a drive-thru at a fast-food restaurant. The officers followed Appellee because “[Appel-lee and his companion] could have taken whatever marijuana was in the apartment with them in the car .... And [the officers] wanted to ask [Appellee] why he slammed the door in [their’] face[s].”
The two officers approached Appellee’s car within thirty seconds after it stopped in the drive-thru. Appellee’s car was positioned behind another car in the drive-thru, preventing him from driving forward. One officer approached the driver’s side of Appellee’s car; the other walked behind the car and approached the passenger’s side. The officer on Appellee’s side immediately confronted him with the question “why he had slammed the door in [their] face.” Appellee appeared noticeably nervous when confronted by the officer. Although Appellee testified that he did not feel free to leave at that point, the officer testified that Appellee was in fact free to leave, although he did not communicate that fact to Appellee. During the ensuing conversation, Appellee moved his foot, which revealed a concealed firearm and culminated in his arrest and the search of the car.
Below, the State conceded a lack of reasonable suspicion to confront Appel-lee. The only legal argument it advanced was that the encounter between police and Appellee was consensual, and this is the only issue we address here. A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, and the appellate court must interpret the evidence and reasonable inferences therefrom in a manner most favorable to sustaining the ruling. State v. Watson, 187 So.3d 349, 351 (Fla. 5th DCA 2016) (citing Pritchard v. State, 987 So.2d 204, 205 (Fla. 5th DCA 2008)). While the trial court’s factual findings are reviewed for substantial, competent evidence, its application of the law to the facts is reviewed de novo. State v. Thomas, 109 So.3d 814, 817 (Fla. 5th DCA 2013) (citing McMaster v. State, 780 So.2d 1026, 1028 (Fla. 5th DCA 2001)).
Appellee’s belief that he was not free to leave is not dispositive of our analysis because we use the objective standard of what a reasonable person would have believed under the totality of the circumstances. See Caldwell v. State, 41 So.3d 188, 196-97 (Fla. 2010) (seizure analysis does not depend on what particular suspect believed, but on whether officer’s words or actions “would have conveyed to a reasonable, innocent person that he was not free to leave” (citing Florida v. Bostick, 501 U.S. 429, 437-38, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991))). “[T]he crucial test is whether, taking into account all of the circumstances sun-ounding the encounter, the police conduct would ‘have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.’ ” Bostick, 501 U.S. at 437, 111 S.Ct. 2382 (quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)). In reaching this conclusion, the courts look at many factors, none of which is individually dispositive. United States v. Glass, 128 F.3d 1398, 1406 (10th Cir. 1997).
Here, a number of factors cause us to conclude that the encounter was not objectively consensual. First, Appellee was initially confronted at his home by two uniformed police officers. See United States v. Hernandez, 847 F.3d 1257, 1263 (10th Cir. 2017) (confrontation in non-pub- *175 lie place or presence of more than one police officer, wherever confrontation occurs, militate against finding consensual encounter). Second, the words used by the officers were accusatory in nature, rather than general questions, suggesting that Appellee was not free to leave. See United States v. Ward, 961 F.2d 1526, 1532 (10th Cir. 1992) (officers asking accusatory questions rather than general inquiries suggests that person is not free to leave), overruled on other grounds by United States v. Little, 18 F.3d 1499, 1504 (10th Cir. 1994). Third, the officers did not tell Appellee that he was free to leave. Id. at 1533 (failure of police to advise person he is free to leave is factor militating against consensual encounter). Finally, and the factor that we deem most significant here, not only did police not tell Appellee that he was free to go about his business, they manifested quite the contrary through their conduct. Despite a clear manifestation by Appellee that he had no interest in talking to police, they continued to attempt to make contact with him by knocking on his door after he shut it, following him in a marked police car through several turns, and approaching him on foot in the drive-thru. See United States v. Wilson, 953 F.2d 116, 122 (4th Cir. 1991) (police “persistence” in attempting to question defendant after clear manifestation of intent to terminate encounter conveys to reasonable person that he is not free to leave); see also United States v. Jerez, 108 F.3d 684, 692 (7th Cir. 1997) (persistent knocking by police on motel door and window “in the face of the refusal to admit, transformed ... [attempted] consensual encounter into an investigatory stop”).
The factor on which the State and our dissenting colleague rely—that police did not themselves restrict Appellee’s movement—is only one factor and is by no means more dispositive than any other factor. See Rios v. State, 975 So.2d 488, 490 (Fla. 2d DCA 2007) (restraining movement is one indication of investigatory stop). The trial judge afforded little if any weight to this factor, concluding that Ap-pellee could not back up without risking injury to the officers caused by the side-mounted mirrors. The dissent challenges the record basis for this conclusion, which was addressed only in argument of counsel. We think this was a reasonable inference from the record or, at a minimum, a proper subject for judicial notice of generally known facts.
Even if this particular finding was erroneous, we nevertheless agree with the trial judge’s conclusion that little weight should be given to this factor. Appellee’s easiest and safest route of departure was impeded by the car in front of him, and he was blocked by the second officer’s approach from behind the vehicle, preventing him from avoiding the encounter before it began. Once the encounter began, to expect a reasonable driver to terminate an encounter by attempting to back a vehicle out of a drive-thru while two officers stand straddled on both sides, running the risk of injury to the officers, is an inherently undue burden. Furthermore, there was little reason for Appellee to believe that another attempt to terminate the contact with these two persistent officers would be any more successful than the first. They apparently were not inclined to take “no” for an answer, for obvious reasons. Accordingly, even if this one factor weighs in favor of the State’s position, we conclude that it is outweighed by the other factors we have addressed.
AFFIRMED.
ORFINGER, J., concurs.
BERGER, J., dissents with opinion.