**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 11-30023 |
| Plaintiff - Appellee, | D.C. No. 4:09-cr-00154-BLW-2 |
| v. | |
| ANAYELL NIETO-ROJAS, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted February 6, 2012
Seattle, Washington

Before: SCHROEDER, ALARCÓN, and GOULD, Circuit Judges.

Nieto-Rojas ("Appellant") appeals the district court's decision denying her

motion to suppress evidence.

Appellant and her two passengers were being monitored by Idaho officers

for possible involvement in a drug transaction. After she drove into Utah, an Idaho

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

officer requested Utah officers to stop Appellant's car if they could do so. Idaho police requested both trying to obtain identity of the occupants of the vehicle and seeing if money from the drug buy could be recovered.

Utah Trooper Rindlisbacher pulled the vehicle over on a busy highway for excessive window tinting. He issued Appellant citations for excessive tint on her windows, for illegally transporting beer into Utah, and for not having a driver's license. He told Appellant that he would have to impound the car because neither she nor her passengers had a valid driver's license. Trooper Rindlisbacher told Appellant that she could call someone to get picked up and was free to leave when her ride arrived. The district court found that the "officers['] demeanor toward [Appellant] was, for most of the encounter, deferential and protective rather than commanding." Trooper Rindlisbacher directed Appellant where to sit and where to stand, but this is to be expected on a busy highway. Thus, the record shows the seizure and temporary detention of Appellant ended when she was issued the citation for her traffic violations.

Appellant and her passengers were requested to leave the vehicle so that two other officers could conduct an inventory search of the impounded vehicle. A drug-sniffing dog alerted on the exterior of the passenger door to a controlled substance. The K-9 officer opened the door on the passenger side. The dog

entered and alerted to the odor of a controlled substance on the front seat on the passenger side of the vehicle. A search of the interior of a vehicle after a drug-sniffing canine has alerted to the odor of a controlled substance after walking around its exterior is not unreasonable under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005).

After the dog alerted to the odor of a controlled substance on the passenger side of the front seat, Trooper Rindlisbacher first questioned and searched the passenger who had been sitting there. Next, he asked Appellant to move over to the car, pointed at the seat and said that "the dog said" there were drugs there, and asked her if the people in the car had drugs. He asked her if she had drugs on her, and she said no. He said, "Do you care if I look? Do you have anything in your pockets or purse? Do you care if I look?" She said no. He said, "Do you understand?" to which she replied, "No. I don't know." He said, "You spoke English fine before. Do you care if I look in your purse and in your pocket? Do you understand?" She paused about five seconds, sighed, and then said okay. He asked her one more time whether she understood and if it was okay, and she said yes. He then searched her purse, found a gun, and arrested her. He also found more than $2,000 in cash, some of which consisted of pre-recorded bills from the drug transaction the Idaho police were monitoring.

Appellant moved to suppress the evidence found in the search on the grounds that her consent was not voluntary. The district court denied her motion. Appellant entered a conditional guilty plea to conspiracy to distribute a controlled substance and attempted escape from custody,[1] preserving her right to appeal the district court's denial of her motion to suppress the evidence. We now address the issue of suppression in this appeal.

"[A] district court's determination whether a defendant voluntarily consented to a search depends on the totality of circumstances and is a question of fact we review for clear error." *United States v. Washington*, 490 F.3d 765, 769 (9th Cir. 2007). We consider five factors in determining voluntariness: (1) whether Appellant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether *Miranda* warnings were given; (4) whether Appellant was notified that she had a right not to consent; and (5) whether Appellant had been told a search warrant could be obtained. *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002). "These factors serve merely as guideposts, not as a mechanized formula to resolve the voluntariness inquiry." *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009) (internal quotation marks and citations omitted).

---

[1] The attempted escape occurred after Nieto-Rojas had been arrested and is not part of the subject of this appeal.

We must look to the totality of the circumstances to determine whether the district court committed clear error.

The district court held that Appellant was not in custody when her purse was searched, reasoning that the officers were deferential and protective rather than commanding, that they asked rather than demanded to search her purse, that they did not physically control her at any time or display their weapons, and that they told her multiple times that she was free to go when her ride arrived. Appellant argues she was in custody because there were three officers on the scene, she was cited for traffic violations, English was not her native language, she watched the officers conduct an inventory search of the car, her passenger was searched in front of her, and she was told that she could leave when her ride came but she was not told she could leave before. We agree with the district court that Appellant was not in custody. Appellant was told several times she would be free to leave when her ride came. She did not ask to leave before her ride came. It was not unreasonable for the officer to stay with Appellant and her passengers while she waited for a ride, given the dangers of the busy highway.

Even if we were to conclude that the district court erred and Appellant was in custody, her consent was voluntary under the totality of the circumstances. This case is not similar to *Washington*, which Appellant cites. *Washington*, 490 F.3d at

776. There, the court found significant that Washington's consent was made at night on a dark street, that he was outnumbered two-to-one, that he was searched in a vulnerable position (with his hands on top of the squad car), and that there was a "unique situation in Portland between the African-American community and the Portland police." *Id*.

Here, Appellant was not alone—she was with her two passengers at all times. The stop and request for search was made in broad daylight in a busy location with others present. The officers told her more than once that she would be free to go when her ride arrived. Throughout the encounter, the officers had been generally pleasant to Appellant. They never made her stand in a vulnerable position like in *Washington*. We have reviewed the full record including the video of the stop. We hold that under the totality of the circumstances Appellant voluntarily consented to the search of her purse and that her consent was never withdrawn.[2]

Appellant argues that the use of the drug-sniffing dog was illegal and that the fact that the dog alerted to drugs in her car coerced her to consent. Viewing the dog's alert under the totality of the circumstances, it did not coerce the consent.

_____

[2] While Trooper Rindlisbacher was searching Appellant's purse, she told him that her ride was there. She did not ask him to stop his search, and less than thirty seconds later he found the gun in her purse.

We also hold that the search of Appellant's purse did not exceed the scope of consent.  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  The officers asked to look in Appellant's purse.  She consented.  Her consent, without an express limitation, gave the police permission to search her purse in the manner they did.  *Id.* at 252.  She at no time told them to stop or withdrew her consent.  The search did not exceed the scope of Appellant's consent.

**AFFIRMED**