[Cite as *State v. Korb*, 2014-Ohio-4543.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


STATE OF OHIO,                          :          **O P I N I O N**

      Plaintiff-Appellee,            :
                                                    **CASE NO.  2013-L-126**
  - vs -                               :

ASHLEY A. KORB,                         :

      Defendant-Appellant.           :


Criminal Appeal from the Lake County Court of Common Pleas, Case No. 12 CR 000761.

Judgment: Affirmed.


*Charles E. Coulson,* Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Gregory T. Stralka,* 6509 Brecksville Road, P.O. Box 31776, Cleveland, OH 44131 (For Defendant-Appellant).


DIANE V. GRENDELL, J.

{¶1}   Defendant-appellant, Ashley A. Korb, appeals the June 11, 2013 Judgment Entry of the Lake County Court of Common Pleas, denying her Motion to Suppress.  The issue before this court is whether a passenger in a lawfully impounded vehicle may freely give her consent to the search of her purse and whether the scope of such consent includes identification cards within the purse.  For the reasons that follow, we affirm the Judgment of the court below.

{¶2}   On March 18, 2013, the Lake County Grand Jury indicted Korb for Breaking and Entering (Count 1), a felony of the fifth degree in violation of R.C. 2911.13(A), Theft (Count 2), a felony of the fifth degree in violation of R.C. 2913.02(A)(1), and Receiving Stolen Property (Count 3), a felony of the fifth degree in violation of R.C. 2913.51(A).

{¶3}   On April 5, 2013, Korb waived her right to be present at arraignment and entered a plea of not guilty.

{¶4}   On April 29, 2013, Korb filed a Motion to Suppress.

{¶5}   On May 28, 2013, a hearing was held on Korb's Motion.

{¶6}   On June 11, 2013, the trial court issued a Judgment Entry, denying the Motion to Suppress.  The court made the following pertinent findings:

> On November 12, 2012, Painesville Police Officer Kevin Rastall stopped a vehicle with a headlight out and expired tags.  Defendant was the front passenger in said vehicle.  Officer Rastall spoke with the driver of the vehicle, obtained his information and then returned to the patrol car.  Officer Rastall determined that the vehicle should be towed, which meant that the occupants had to be removed.  Officer [Jeff] Baldrey arrived on scene and spoke with Defendant, who provided her name and social security number.  Officer Baldrey ran her information through LEADS and learned that she had no outstanding warrants.
>
> Officer Rastall overheard Defendant's name and remembered that she was a suspect in a theft case.  He asked her about the theft

2

and she denied any involvement. Officer Baldrey then asked Defendant if he could search her purse. Defendant agreed and they stepped to the hood of the vehicle where Officer Baldrey began to look inside Defendant's purse. As he looked through her wallet, he found identification cards that did not belong to Defendant. Officer Baldrey recognized the name on the cards as that of a victim in another theft case. Defendant was subsequently arrested and taken back to the police station.

{¶7} On October 2, 2013, Korb entered a plea of No Contest to Breaking and Entering (Count 1) and Receiving Stolen Property (Count 3).

{¶8} On November 8, 2013, the trial court issued its Judgment Entry of Sentence, sentencing Korb to three years of community control and various other sanctions and conditions, including restitution in the amount of $80. On motion of the assistant prosecutor, the court entered a Nolle Prosequi on the charge of Theft (Count 2).

{¶9} On December 5, 2013, Korb filed a Notice of Appeal.

{¶10} On appeal, Korb raises the following assignments of error:

{¶11} "[1.] The trial court's denial of the motion to suppress was in error as the court failed to consider that the consent given for the search of a purse was not freely given and beyond the scope of any alleged consent."

{¶12} "[2.] The Appellant's constitutional right to effective assistance of counsel was violated when such counsel fail[ed] to assert relevant, substantial arguments to the motion to suppress."

3

{¶13} At a suppression hearing, "the trial court is best able to decide facts and evaluate the credibility of witnesses." *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 41. "Its findings of fact are to be accepted if they are supported by competent, credible evidence, and we are to independently determine whether they satisfy the applicable legal standard." *Id.*, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Wysin*, 11th Dist. Portage No. 2013-P-0037, 2013-Ohio-5363, ¶ 27 ("[o]nce the appellate court accepts the trial court's factual determinations, the appellate court conducts a de novo review of the trial court's application of the law to these facts") (citation omitted).

{¶14} Korb argues under her first assignment of error that the consent she gave to search her purse was not valid, and, therefore, the results of the search should have been suppressed.

{¶15} The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no Warrants shall issue, but upon probable cause."[1]

{¶16} "A search is valid and does not violate the Fourth Amendment to the United States Constitution when the consent is freely and voluntarily given." *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640 (1990); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("[i]t is * * * well settled that

---

1. Article I, Section 14 of the Ohio Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized." Except in certain circumstances not relevant here, the Ohio Supreme Court "has interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the Fourth Amendment." *State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997).

4

one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent").

{¶17} "To rely on the consent exception of the warrant requirement, the state must show by 'clear and positive' evidence that the consent was 'freely and voluntarily' given." (Citation omitted.) *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988); *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("where the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority"). "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Schneckloth* at 248.

{¶18} "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. "Because a reviewing court should defer to a trial court when it acts as the trier of fact, an appellate court must give proper deference to a trial court's finding regarding whether a defendant voluntarily consented to a search." *State v. Spivey*, 8th Dist. Cuyahoga No. 99694, 2013-Ohio-5581, ¶ 19; *State v. Stepp*, 4th Dist. Scioto No. 09CA3328, 2010-Ohio-3540, ¶ 22.

{¶19} The following facts in the present case bear on the voluntariness of Korb's consent: Korb was detained/seized as the result of a valid traffic stop, but not otherwise in custody. *Compare State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d

5

985, ¶ 13 ("a motorist who is temporarily detained as the subject of an ordinary traffic stop is not 'in custody' for the purposes of *Miranda*").  The driver of the vehicle was issued a citation but not placed under arrest.  The decision was made to impound the vehicle in which Korb was a passenger, and she was ordered out of the vehicle. *Compare Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.E.2d 41 (1997) ("an officer making a traffic stop may order passengers to get out of the car pending completion of the stop").  Officer Rastall immediately questioned her about a theft in which she was a suspect: "At that point I, actually we ask her out of the vehicle and she steps out and I ask if she wants to talk about the theft and she basically says that she didn't do it or something to that effect and then maybe about a minute [sic] and I sent her up to Officer Baldrey."

{¶20} Officer Baldrey testified: "I asked Miss Korb to exit the vehicle and I asked her do you mind, who you are, yes, sure.  She's cooperative, I believe she gave her license."  While Officer Rastall was speaking with Korb for about a minute, Officer Baldrey ran her license through LEADS and determined that there no warrants for her. According to Officer Baldrey: "I asked her can I search your purse, she's very cooperative and said yes.  * * *  Once she gave her permission to search it I said come to the front of the car right here, we'll do it together, you can watch here, do it right here."  While searching a wallet in the purse, Officer Baldrey found identification cards belonging to someone else.

{¶21} The search of the purse occurred ten to twelve minutes after the initial stop.  Neither Officer Rastall nor Officer Baldrey advised Korb whether she was free to

6

leave the scene or to refuse to give her consent to the search.[2] *Compare Ohio v. Robinette*, 519 U.S. 33, 39-40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ("it [is] unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary").

**{¶22}** Considering these factors, we agree with the trial court's determination that Korb's consent to the search of her purse was freely and voluntarily given. There was virtually no evidence that police officers obtained Korb's consent by duress or coercion. Neither she nor the driver of the vehicle had been formally arrested. The search occurred about twelve minutes after the initial stop. Except for being ordered out of the vehicle, Korb's freedom of movement was not restrained. She had denied her involvement in a theft to Officer Rastall without adverse consequence. Her conduct throughout the encounter was cooperative.

**{¶23}** The present case is readily distinguishable from the case cited by Korb, *State v. Abdulrahman*, 8th Dist. Cuyahoga No. 95159, 2011-Ohio-1931, where the defendant's consent to search was affirmed to be invalid. In *Abdulrahman*, the defendant was subjected to a seizure amounting to a formal arrest prior to the consent being obtained. *Id.* at ¶ 28 ("[t]he officers did not simply approach defendant on the street or in another public place, ask him if he is willing to answer some questions," but, rather, "defendant was immediately accosted and seized, * * * patted down and handcuffed immediately, and * * * was not free to exit the building").

**{¶24}** Korb argues in the alternative that Officer Baldrey exceeded the scope of the consent by searching the wallet inside the purse. Although Korb did not raise this

_____

2. Officer Rastall testified that Korb was not free to leave until the inventory of the vehicle was completed according to policy, but this was not communicated to Korb. The search of Korb's purse occurred before the vehicle was towed.

7

argument in the court below, we will consider its merits in light of her second assignment of error, alleging ineffective assistance of counsel based on the failure to raise the argument.

{¶25} "The scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "The standard for measuring the scope of consent under the Fourth Amendment is objective reasonableness, i.e., what a typical reasonable person would have understood by the exchange between the officer and the suspect." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 99.

{¶26} "Generally, consent to search a space includes consent to search containers within that space where a reasonable officer would construe the consent to extend to the container." *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir.2000). "A suspect may of course delimit as he chooses the scope of the search to which he consents. But if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Jimeno* at 252.

{¶27} In the present case, Officer Baldrey reasonably understood the scope of Korb's consent to include the wallet in her purse, based on the lack of "any explicit limitation on the scope of the search." *Id.* at 251. As noted above, Officer Baldrey testified that Korb readily gave her consent to the search of the purse and was "very cooperative." Officer Baldrey had Korb stand beside him while he searched the purse, and there was no evidence that she raised any objection to his conduct during the search. *United States v. Nieto-Rojas*, 470 Fed.Appx. 674, 678 (9th Cir.2012) ("[h]er

8

consent, without an express limitation, gave the police permission to search her purse in the manner they did"); *United States v. Lopez-Mendoza*, 601 F.3d 861, 868 (8th Cir. 2010) ("[f]ailure to object to the continuation of the search," where the defendant is standing nearby and expresses no concern, "may be considered an indication that the search was within the scope of consent") (citation omitted); *State v. Wiley*, 51 P.3d 361, 363 (Colo.App.2011) ("a reasonable person in defendant's position would have understood that granting the officer consent to search the purse for 'illegal items' also authorized him to search all containers found inside the purse").

{¶28} Officer Baldrey testified that it was his purpose "to find out if she had any weapons or contraband in her purse." It is not clear from the record, however, that Officer Baldrey expressed his purpose of the search to Korb. Whether Korb knew of Officer Baldrey's purpose does not change the outcome. If Korb knew Officer Baldrey was looking for contraband, it was reasonable to understand that such could be found in the wallet. If Korb did not know the purpose of the search, this fact does not invalidate her otherwise valid general consent to search. "If the consent to search is entirely open-ended, a reasonable person would have no cause to believe that the search will be limited in some way," regardless of the fact "[t]hat the defendant did not -- and probably could not -- know what the officer was looking for." *United States v. Snow*, 44 F.3d 133, 135 (2nd Cir.1995); *United States v. Canipe*, 569 F.3d 597, 605 (6th Cir.2009) ("'general consent [to a search] permits the opening of closed but unlocked containers found in the place as to which consent was given' even 'where officers did not tell the suspect the object of their search'") (citation omitted).

{¶29} The first assignment of error is without merit.

{¶30} In the second assignment of error, Korb argues that trial counsel was constitutionally ineffective in her prosecution of the Motion to Suppress. Korb does not expressly state in what manner counsel was ineffective, but merely "incorporates by reference [her] argument in the First Assignment of Error." Appellant's Brief at 13. As no valid grounds were found for suppressing the evidence under the first assignment of error, there are no valid grounds for finding that Korb's trial counsel was constitutionally ineffective. *State v. Issa*, 93 Ohio St.3d 49, 68, 752 N.E.2d 904 (2001) ("[c]ounsel is certainly not deficient for failing to raise a meritless issue"); *compare State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980) ("where there exists no grounds for the suppression of evidence, a defense attorney has no duty to file a motion to suppress evidence").

{¶31} The second assignment of error is without merit.

{¶32} For the foregoing reasons, the June 11, 2013 Judgment Entry of the Lake County Court of Common Pleas, denying Korb's Motion to Suppress, is affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.